(No. 11585.—Judgment reversed.)

The Sanitary District of Chicago, Plaintiff in Error, *vs.* The Industrial Board of Illinois *et al.* Defendants in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 7, 1918.*

1. Workmen's compensation—*when a bill of exceptions is not necessary.* Where the Industrial Board has confirmed an award and the employer has sued out a writ of *certiorari* from the circuit court, to which the Industrial Board has made its return, and the circuit court quashes the writ and enters judgment affirming the decision, the record of such proceedings is a sufficient record in the Supreme Court without a bill of exceptions.

2. Same—*when propositions of law need not be submitted to circuit court.* Propositions of law are required to be submitted to the circuit court only where there is a right to a jury trial and that right has been waived; and such propositions need not be submitted in a *certiorari* proceeding to review the record of the Industrial Board, as the judgment in such case depends on an inspection of the return, and there is no right to a trial by jury.

3. Same—*the Workmen's Compensation act does not apply to separate line of business not connected with the employer's extra-hazardous occupation.* The Workmen's Compensation act refers to the business and not to the person of the employer, and it does not extend to separate lines of business of an employer having no connection with his extra-hazardous occupation unless the employer has affirmatively accepted the provisions of the act.

4. Same—*when there can be no recovery for death of employee of the sanitary district.* The fact that the Sanitary District of Chicago is engaged in an extra-hazardous business in making electric-

ity at Lockport does not entitle an administrator to recover, under the Workmen's Compensation act, for the accidental death of an employee who was keeper of a crib for the intake of water from Lake Michigan and whose duties had no connection with the extra-hazardous business conducted by the district.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

EDMUND D. ADCOCK, (JOHN H. MCAULIFFE, and LEO SPITZ, of counsel,) for plaintiff in error.

P. R. BOYLAN, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

William F. Cannell, keeper of the crib of the Sanitary District of Chicago in Lake Michigan, was drowned in the lake on February 5, 1914. Charles Ackerman, administrator of his estate, on November 24, 1914, made application to the Industrial Board for an adjustment of a claim for compensation under the Workmen's Compensation act. A committee made an award in favor of the applicant and the sanitary district petitioned for a review by the Industrial Board. There was a hearing before the board, and the decision of the committee was affirmed and an order made requiring the payment of $15 for one month from February 5, 1914, and $42.50 per month for eighty-two months. The sanitary district sued out a writ of *certiorari* from the circuit court of Cook county and the Industrial Board made its return to the writ. The court quashed the writ, entered judgment affirming the decision of the Industrial Board and ordering payment accordingly, and certified that the case was one proper to be reviewed by this court.

The defendants in error moved the court to strike the bill of exceptions from the files because the finding and judgment of the circuit court were not therein set out, and the bill of exceptions did not preserve any exception or spe-

cifically state that there was exception to the findings. The motion was denied, and the same argument is made as an answer to the assignments of error. The writ of *certiorari,* the record certified to the court as a return, the order quashing the writ of *certiorari,* and the judgment of the court, constitute the record. The supposed bill of exceptions merely recites the hearing and judgment of the court, which was already of record, and no bill of exceptions was necessary. *City of Pana* v. *Industrial Board,* 279 Ill. 279.

Another objection of defendants in error is, that the plaintiff in error failed to submit propositions of law to the circuit court to be held or refused. Such propositions are to be submitted only where there is a right to a jury trial and that right has been waived. The judgment of the court in a case of this kind depends on an inspection of the return and there is no right to a trial by jury, so that the act permitting a party to submit to the court written propositions of law to show the principles of law applied by the court to the decision of the case did not apply. *Trego* v. *Estate of Cunningham,* 267 Ill. 367.

At the hearing before the committee the sanitary district admitted the death by drowning of William F. Cannell while in its employment, that his wages were $85 per month and that if the district was liable at all it was liable for $3500, but it disputed the claim that the death of Cannell resulted from an injury arising in the course of his employment, and denied that the death of Cannell came within the provisions of the Workmen's Compensation act, which had never been affirmatively accepted by the district.

The sanitary district maintains a crib in Lake Michigan, 1445 feet from the shore, at Lawrence avenue, for the intake of water from the lake, which is drawn through the crib and the intake by a steam pump for the dilution of sewage of the district. There are gates at the crib to keep logs, boards and other floating material out, and Cannell was in the employ of the sanitary district as keeper of the

crib. It was his duty to see that the gates were kept clear and to light the light in the crib in the evening and put it out in the morning under a government regulation. Cannell was required to live at the crib, and there were four rooms, with beds and conveniences for that purpose. In the evening of February 4, 1914, Cannell, in company with Steve Varley and two married women not living with their husbands, visited three saloons, and at the last one, about midnight, made an agreement for the whole party to go to the crib the next morning. Cannell said he intended to serve fish dinners and beer at the crib in the coming summer, and proposed that the women should go out and fix up the place and see what they thought about the plan, and said that he wanted them to do the work and he would pay them good money when he started the dinners. The next morning the four went out to the crib in a row-boat owned by the sanitary district. They had six bottles of beer and a bottle of whisky, and four bottles of the beer were drunk by the party while Cannell and Varley drank most of the whisky. The women cooked the dinner, washed the dishes, cleaned up the premises and the party played a few games of cards. About four o'clock in the afternoon a man named Wilson telephoned to Cannell from the saloon where the arrangement had been made, and Cannell talked to the bar-tender, telling him to let Wilson have a dollar until he came to the shore that night. The bar-tender gave Wilson the dollar and Cannell directed Wilson to go to a store and get some lamp chimneys and a frying pan. Cannell and Varley left the crib in the row-boat soon after the telephone conversation and arrived at the shore about 4:30. Ice was floating in the lake, and near the shore one man chopped a way through the ice while the other did the rowing. Cannell, Varley and Wilson started back for the crib in the row-boat and it was then getting dark. The women soon heard cries for help and the men said their boat was leaking. It was then about a quarter after five, and the

women could see the boat with field glasses and called up
the life-saving station.  A woman on Lawrence avenue tele-
phoned the pumping station that there were men going over
to the crib and she heard moans and shouting on the lake,
and the engineer called two oilers and sent them down to
the lake with one hundred feet of rope, but the men could
see nothing and could only hear the calling and the roaring
of the lake.  The engineer then called up the police and
chief engineer, the pulmotor and the fire alarm.  He also
called the crib and told the women the fire tug would be
there soon.  The cries from the boat continued until nine
o'clock, when they ceased and the boat went down.

The Industrial Board stated the issues before it to be
whether Cannell at the time of his death was in the course
of his employment or engaged in a personal matter for pleas-
ure, and whether the sanitary district, not having elected to
be bound by the provisions of the Workmen's Compensation
act, was amenable to its provisions, and recorded its finding
that Cannell at the time of his death went to the city to ob-
tain the necessaries of life, and that the sanitary district,
being engaged in the manufacture of electricity for its own
use and for sale and having such machinery as dynamos'
and electric appliances covered by the statute and municipal
ordinances, was engaged in an extra-hazardous business and
was bound by the provisions of the Workmen's Compensa-
tion act.  The claim of the applicant that the sanitary dis-
trict was under the Workmen's Compensation act as to this
case was stated by the Industrial Board as follows: "The
position of the applicant is that the sanitary district was
engaged in the manufacture of electricity for its own use
and for sale, and that it had such machinery in the line of
dynamos, electric appliances of all kinds, which were cov-
ered by municipal ordinances."  That position was sus-
tained, and no other reason was given for bringing the case
under the act and no other reason has been advanced in
the brief and argument for the defendants in error.

There was no evidence that the chimneys and frying pan were procured by Wilson, and necessarily there was no evidence that they were in the boat for the reason that the men were drowned, but it is a fair inference that Wilson did get the lamp chimneys and frying pan and that Cannell went to the shore, in part, to get them, although the taking of the other men to the crib had no connection with his employment or his duties to the sanitary district but was a part of the arrangement with the women who remained at the crib.

The Industrial Board and the circuit court decided that the sanitary district, being engaged in the manufacture of electricity for its own use and for sale, was engaged in an extra-hazardous occupation and came within the provisions of the Workmen's Compensation act without accepting its provisions. It was engaged in the manufacture of electricity for its own use and for sale, with the necessary dynamos and machinery, but it had and maintained independent departments, and if they were independent and had no connection with each other its liability and the rights of its workmen depended upon the nature of the business conducted in the separate departments. The sanitary district was organized under the act in force July 1, 1889, "to create sanitary districts and to remove obstructions in the Desplaines and Illinois rivers," which authorized the creation of the district for the maintenance of an outlet for drainage, which would conduce to the preservation of the public health. The act authorized the district to control and dispose of any water power which might be incidentally created in the construction or use of its channels or outlets, but the primary object of the corporation was and is the preservation of the public health. By an act passed in 1903 the district was authorized to construct dams, water-wheels and other works at the upper basin of the Illinois and Michigan canal, and it was provided that the power available by works so constructed should be converted into electrical en-

ergy and transmitted to the various cities, towns or villages within the sanitary district or adjacent to the main channel. Under the authority so conferred the district established the works provided for, with the necessary machinery, at Lockport, in Will county, and there engaged in the manufacture of electricity for its own use and for sale. The crib, the intake and pump were constructed and used for the primary purpose of improving sanitary conditions and safeguarding the health of the public, and had no connection whatever with the production, sale or distribution of electrical energy or the operation of the hydro-electric power plant more than thirty miles distant. None of them were operated for the purpose of producing either water power or the works from which electricity is manufactured but were for the purpose of introducing lake water to mix with and improve the condition of sewage. The business of the district carried on at Lockport is extra-hazardous, as defined by the Workmen's Compensation act, but that act refers to the business and not to the person of the employer and it does not extend to separate lines of business having no connection with the extra-hazardous occupation. (*Marshall* v. *City of Pekin,* 276 Ill. 187; *Vaughan's Seed Store* v. *Simonini,* 275 id. 477.) It was not intended that employers engaged in an extra-hazardous occupation but carrying on an independent occupation not extra-hazardous should be subjected to a greater liability than other employers engaged in an occupation not extra-hazardous. The duties of Cannell having no connection whatever with the extrahazardous business conducted by the district at Lockport, and the sanitary district not having elected to come under the provisions of the act, his administrator was not entitled to compensation.

The judgment is reversed.          *Judgment reversed.*