(No. 13861.—Reversed and remanded.)

Rosamond McNaught, Admx. Defendant in Error, *vs.* Walker D. Hines, Director General of Railroads, Plaintiff in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 7, 1921.*

1. Statutes—*statute cannot be construed if it is unambiguous.* Where the language of a statute is clear and unambiguous there is no room for construction, and the words used must be taken in their ordinary, natural and commonly received sense.

2. Workmen's compensation—*section 3 of Compensation act of 1917 is a valid exercise of police power.* Section 3 of the Compensation act of 1917, making the law binding upon all employers engaged in extra-hazardous enterprises or businesses as defined in the act, is a valid exercise of the police power of the State.

3. Same—*when recovery for death of traveling salesman killed by railroad train must be under Compensation act.* A salesman for a meat packing company, which is engaged in an extra-hazardous business under section 3 of the Compensation act of 1917, is an employee under the act within the meaning of section 5, and if he is killed while crossing a railroad track after taking orders from a customer, and the railroad company is engaged in intrastate commerce, all three parties are under the Compensation act and recovery must be had under its provisions. (*Sanitary District* v. *Industrial Board,* 282 Ill. 182, and *Bowman Dairy Co.* v. *Industrial Com.* 292 id. 284, distinguished; *Illinois Publishing Co.* v. *Industrial Com.* 299 Ill. 189, and *Goldsmith* v. *Payne,* (*ante,* p. 119, followed.)

Writ of Error to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. Sain Welty, Judge, presiding.

George B. Gillespie, (A. E. & R. C. DeMange, L. J. Hackney, Stanley W. Merrell, Geo. B. & Geo. M. Gillespie, and F. L. Littleton, of counsel,) for plaintiff in error.

Sigmund Livingston, and W. W. Whitmore, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

Defendant in error, as administratrix of her husband's estate, brought a suit in the circuit court of McLean county against Walker D. Hines, Director General of Railroads, operating the Cleveland, Cincinnati, Chicago and St. Louis railway, for the death of her husband, claiming it to have been caused by the negligence of the railway company. On the trial before a jury a verdict in favor of defendant in error was given for $9000 and judgment entered thereon in the circuit court. On appeal to the Appellate Court that judgment was affirmed, and the case has been brought to this court on petition for *certiorari.*

The declaration consisted of four counts, each charging in some form negligence in the operation of the engine and cars of the railway company. It appears that on January 24, 1918, the deceased was a traveling salesman for the Wink Packing Company of Peoria. On the afternoon of that day he arrived at the village of Lilly, in Tazewell county, on an interurban car a few minutes before six o'clock. The Wink Packing Company sold meats and their by-products, and the object of the deceased in going to Lilly was to procure an order from the firm of Rutledge & Garrett, a customer. About forty people lived in Lilly, and the buildings there located consisted of several business places, plaintiff in error's railroad depot, an interurban depot and about twelve houses. The plaintiff in error's railroad runs through this place east and west and the interurban electric

railway parallels it on the north, about seventy-five feet distant therefrom. A block south of the railroad tracks an unnamed street runs east and west parallel therewith and ends at the east side of Hay street. On the north and south sides of this unnamed street or passageway above mentioned and west of Hay street are located some of the business places mentioned. The store of Rutledge & Garrett is located at the southwest corner of the intersection of the unnamed street and Hay street. Running north from this street for a short distance is a cement walk, beyond which is a path which runs diagonally in a northeasterly direction, crossing the railroad tracks in the center of Hay street and continuing northeasterly across Hay street to the interurban station, which is north of the interurban tracks and on the east side of Hay street. Hay street is not a regularly traveled highway and has no definite width. Where it crosses plaintiff in error's tracks it is planked to a width of nineteen feet. The evidence tends to show that after the deceased had obtained an order from Rutledge & Garrett he started north on Hay street toward the interurban station to take an interurban car then shortly to be due; that as he approached the crossing plaintiff in error's train also approached it from the east, running between fifty and sixty miles per hour; that it was dark and the headlight on the approaching engine was an oil lamp. There was some conflict in the evidence as to the signals given and as to the speed of the train. There were no eye-witnesses who were able to see the accident at the actual time it happened. Some of the witnesses saw the deceased approaching plaintiff in error's railway as the train in question was coming from the east and said that he was running or going at what might be called a "dog-trot;" that he disappeared in the steam that was escaping from the engine and was struck by the engine, but the on-lookers did not see him struck because of the steam or smoke from the engine. He died very shortly after being struck.

Numerous objections have been raised by plaintiff in error on the merits, and it is earnestly insisted that an instruction directing a verdict should have been given by the trial court. Plaintiff in error filed a plea of general issue, also a special plea. In the special plea it is averred that the Wink Packing Company, which employed the deceased at the time of his death, was a corporation organized under the laws of this State and engaged in an extra-hazardous business, in which statutory and municipal ordinances and regulations were imposed for regulating, guarding, use and placing machinery or appliances for the protection and safeguarding of its employees; that deceased was killed while engaged in the duties of his employment; that neither employer nor employee had elected not to be bound by the provisions of the Workmen's Compensation act then in force; that plaintiff in error was engaged in the business of carriage by land of goods and passengers between points in the State of Illinois for hire, and that the provisions of the Workmen's Compensation act applied to plaintiff in error and his employees. A demurrer was filed to this special plea and sustained and the trial was had upon the general issue.

The Workmen's Compensation act in force at the time of this accident was that of 1917. (Laws of 1917, p. 505.) That act repealed the previous provisions stating what parties came within the Workmen's Compensation act, and provided in section 3, among other things: "The provisions of this act hereinafter following, shall apply automatically, and without election, to all employers and their employees engaged in any of the following enterprises or businesses which are hereby declared to be extra-hazardous, namely." Then followed an enumeration of various articles of extra-hazardous businesses, among which were included: "3. Carriage by land or water and loading or unloading in connection therewith. 4. The operation of any warehouse or general or terminal store houses. * * * 8. In any enterprise in which statutory or municipal ordinance regulations

are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or business are hereby declared to be extra-hazardous."

It is obvious in reading the opinion of the Appellate Court that that court held that the Workmen's Compensation act did not apply because the deceased was not at the time of his death engaged in an extra-hazardous occupation. In reaching this conclusion that court relied entirely upon the decisions of this court which construed the Workmen's Compensation act as it existed in this State prior to the passage of said act of 1917. The opinion of the Appellate Court relies especially on the decisions of this court in *Sanitary District* v. *Industrial Board,* 282 Ill. 182, where the accident occurred in February, 1914, and upon *Bowman Dairy Co.* v. *Industrial Com.* 292 Ill. 284, where the accident occurred February 5, 1917. In both of those cases the accidents took place before the act of 1917 was in force, therefore it is clear that those decisions are not necessarily decisive with reference to the act here to be considered. Indeed, this court distinctly stated in *Oriental Laundry Co.* v. *Industrial Com.* 293 Ill. 539, that it was unnecessary to pass on that question there; that this court was not intending to intimate by anything said in that opinion that the law of 1917,—or as amended in 1919, which is practically the same on this question,—would not bring employees engaged in extra-hazardous occupations automatically under the act, entirely independent and separate from the extra-hazardous employment in which the workmen might or might not be employed at the time. In Harper on Workmen's Compensation (2d ed.) the author, in discussing the provision of the Workmen's Compensation act now under consideration, says, on page 178: "Under the present compulsory law, which is based squarely upon the police power and does not depend in any way upon the

election of the employer, if the employer's business falls within the hazardous classification, under the principles of police power referred to in the *Elerding case,* 254 Ill. 579, all employees in that business should be entitled to the protection of the act, and such an application of the act would not be an unconstitutional discrimination as between employers, such as might be said to result in the case of an elective law."

The first rule for the interpretation of a statute is to let the law-giver—the legislature—speak, and that there shall be no application of rules of construction if the language used is plain in its ordinary meaning, for the very potent reason that there is nothing for a court to do but read and apply the law. Where the language of a statute is clear and unambiguous there is no room for construction, and the words used must be taken in their ordinary, natural and commonly received sense. (*Illinois Central Railroad Co.* v. *City of Chicago,* 173 Ill. 471.) It is the duty of courts to accept a statute as they find it. (*People* v. *Rose,* 174 Ill. 310; *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 201 id. 365.) There can be no question that the railroad company was a carrier engaged in carriage as a common carrier by land between points within the State, within the meaning of paragraph 3 of section 3 of the act of 1917, and that the death of McNaught resulted from the acts of servants and the operation of instrumentalities promoting and carrying on the business of the company as a carrier by land. The eighth paragraph in the special plea in plain language so alleges. Section 3 of the act, making the law binding upon those engaged in extra-hazardous enterprises or businesses, has been sustained as a valid exercise of the police power of the State. (*Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167; see, also, *Mobile, Jackson and Kansas City Railroad Co.* v. *Turnipseed,* 219 U. S. 35.) It would also seem plain from a reading of the special plea that if the facts set forth therein are

true the Wink Packing Company and the deceased were within the act. The first part of section 3 and paragraph 8 of said section would seem clearly to apply, for under the allegations of the special plea the Wink Packing Company was engaged in an enterprise or business in which statutory and municipal ordinances and regulations were imposed for the regulating, guarding and placing machinery or appliances for the protection and safeguarding of its employees and of the public therein. The plea alleges that the Wink Packing Company was carrying on the business of buying, slaughtering, storing and warehousing meat animals and carcasses, selling and loading meats and meat products and other wares and merchandise; that a great number of carcasses of meat were hung by it in cold storage rooms; that in connection with its business it operated mechanical hoists, pulleys, shafts and bearings driven by electric motors of great size, and freight elevators operated by electric motors, which also operated other machinery, and that the business was one in which statutory and municipal ordinance regulations were then and there imposed for the regulating, guarding, use and placing of machinery and appliances and for the protection and safeguarding of its employees.

Counsel for defendant in error argue, as we understand them, that under sections 4 and 5 of the act of 1917 it was not intended to include employees as within the act unless they were actually engaged in extra-hazardous employment at the time of the injury. Section 4 enumerates who shall be considered employers under section 3 of the act, and the last paragraph of section 5 provides that the term "employee" shall be construed to mean "every person in the service of another under any contract of hire, express or implied, oral or written, * * * who are legally permitted to work under the laws of the State, who, for the purpose of this act, shall be considered the same and have the same power to contract," and then adds, "but not including any person who is not engaged in the usual course of the

trade, business, profession or occupation of his employer."
(Hurd's Stat. 1917, p. 1451.)   It would seem clear from
this exception, however, that the legislature intended to in-
clude all others within the act who are not excluded by this
exception.   (2 Lewis' Sutherland on Stat. Const.—2d ed.—
916.)   The plea alleged that the deceased was an employee
of the Wink Packing Company, then engaged in the busi-
ness of buying and slaughtering meat animals, buying and
dressing, storing, warehousing, selling and loading meat
products and other wares and merchandise, and that at the
time he was killed he was engaged in the business of sell-
ing such products.   The usual course of business shown in
this plea is in accord with the same.   To sell through sales-
men is as much a part of the business made extra-hazardous
as a whole by statute as to buy through purchasers, pack
through packers, grind, store, load and deliver.   It took all
these different parts of the work to make the sum total of
the business in which the employer and his employees were
all engaged, each doing his separate part in the usual course
of the whole business.   Therefore it would seem to follow
necessarily that the deceased at the time he lost his life was
engaged in the usual course of business of his employer.
*Illinois Publishing and Printing Co.* v. *Industrial Com.* 299
Ill. 189.

All three parties being under the Workmen's Compen-
sation act, according to the allegations of the special plea,
section 29 of said act prohibits the prosecution of this cause
by the personal representative of the deceased employee.
*Goldsmith* v. *Payne,* (*ante,* p. 119.)

The trial court erred in sustaining the demurrer to the
special plea.   The judgments of the Appellate and trial courts
will therefore be reversed and the cause remanded to the
circuit court, with directions to overrule the demurrer and to
proceed further in harmony with the views herein expressed.

*Reversed and remanded, with directions.*