## MORSE v. NEW AMSTERDAM CASUALTY CO.

District Court, N. D. Texas. Dallas Division.
February 9, 1929.

No. 3960.

White & Yarbrough, of Dallas, Tex., for plaintiff.

Robertson, Robertson & Gannon, of Dallas, Tex., for defendant.

ATWELL, District Judge. The McKnight Grain & Grocery Company was engaged in the grain and grocery business, and had been so engaged for some time prior to September, 1927. About that time it concluded to install a grain elevator to better handle its grain business and to meet the growing needs thereof. It employed a man by the name of Foot to build or superintend the improvement. The plaintiff, a millwright or carpenter, went to work under Foot. The work was carried on for some time, but the scales that were a necessary adjunct of the new elevator had not arrived, and it was necessary to discontinue the work until that part should arrive. In due time the scales came, and the plaintiff returned to work on November 18th. On November 22d, while at work, Morse slipped, or fell, in some way, and injured his knee. He claims that the injury is total and permanent. At the time the company determined to add a grain elevator, it took out the policy in suit. It is labeled "Standard Workmen's Compensation and Employers' Liability Policy." It classifies the operations of the employer as "Grain elevators—not floating or terminal elevators—operation." Monthly pay roll adjustment, $2,000; rate per hundred dollars, $2.45.

In item 3 of the policy, after setting out the location of the business of the company, there is this proviso: "All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above, as declared in each instance by a disclosure of estimated renumeration of employees under such of the following divisions as are undertaken by this employer."

One of the divisions that follows this language is that quoted above, viz., "Grain elevators—not floating or terminal elevators—operation." In this same item are five different classes of liabilities which the defendant assumes, namely: "(1) All industrial operations upon the premises. (2) All office forces. (3) All repairs or alterations to premises. (4) Specially rated operations on the premises. (5) Operations not on the premises."

On this same page of the policy, and in the same division thereof, and following division 3 is the following: "Additions to, Alterations, and Repairs.—The classifications listed under subdivision 1(a) in this policy include ordinary repair and maintenance on assured's building and equipment only when performed by employees of the assured. Appropriate classifications for new construction work done by assured's employees or contractors, and repairs and maintenance work performed by contractors must be added."

The defendant casualty company, and the employer, McKnight Grain & Grocery Com-

pany, then agreed as follows, in the same instrument:

The company "does hereby agree with the employer named and described as such in the Declarations forming a part hereof, as respects personal injuries sustained by employees * * * as follows:

"One (a) To pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due."

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and

"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse or hospital services * * * are required by the provisions of such Workmen's Compensation Law."

"It is agreed that all the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein. * * * Nothing herein contained shall operate to so extend this policy as to include within its terms any Workmen's Compensation Law, scheme, or plan not cited in an endorsement hereto attached."

"One (b)    To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such or said employees as are legally employed within the territorial limits of the United States. * * *"

"In the event of the bankruptcy or insolvency of this employer the company shall not be relieved from the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency. * * *"

When the scales arrived, the employer company telephoned the general agent of the defendant casualty company, and was told that the policy would continue to cover workmen so engaged, if properly listed and the premium properly paid. Both the listing and the payment of the plaintiff was in accordance with the provisions of the policy. But this is valueless to the plaintiff, since the policy provides that none of its provisions or conditions shall be altered or waived, except by an indorsement attached thereto and signed by certain officers.

At the conclusion of the testimony for both sides, the defendant moves for an instructed verdict on the ground that the plaintiff was not an employee of the grain company within the meaning of the Texas Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309). That statute defines employees as "every person in the service of another under any contract of hire, express or implied, oral or written, * * * except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

The case of Oilmen's Reciprocal Association v. Gilleland (Tex. Com. App.) 291 S. W. 197, is cited as an authority. Gilleland was killed while bricking a pit in which his employer, a laundry company, was about to install a pump for the purpose of pumping water to its laundry plant. The business of the laundry had increased, and the two wells which it had been using were insufficient for the added business, and the new one was dug, and one of its employees was laying a brick wall therein. The Supreme Court approved a decision of the Commission of Appeals, which held that Gilleland was not an employee within the meaning of the law. His employment was not in the usual course of the business of the employer. This language was used:

"But it seems inconceivable to us that it could reasonably be said that a bricklayer, working in connection with the digging of a new well, an incident most unusual and rare, was in the usual course of the laundry's business. In other words, laundries do not ordinarily engage in building brick walls in pits. During a great majority of the days of its operations, it engages in no such business. Therefore such an undertaking is not ordinary or customary, but exceedingly unusual and extraordinary."

The opinion calls attention to the amending of the Texas statute, so as to eliminate the word "casual," which was originally a part thereof. At the time of the original legislation, and at the time of the passing of the amendment both of the words "usual" and "casual" seem to have been well considered by the Legislature. They were not accidental, nor were they thoughtlessly used.

A year later, in Wells v. Lumbermen's Reciprocal Association (Tex. Com. App.) 6 S.W.(2d) 346, the same commission, slightly broadened the Texas holding by including within the benefits of the act an employee specially engaged to make general repairs to machinery used in operating the usual business of the employer.

976

■ We must accept decisions of the Commission, which are approved by the Supreme Court, as opinions of that court, and therefore as the expression of the highest court of this state. Such expressions when construing a purely local law, such as the one under consideration, are binding upon the national court sitting within that state.

■ The defendant maintains that since a grain elevator is incomplete without a hopper, and since the plaintiff was constructing a hopper for the new plant at the time of his injury, that he was therefore engaged in the "usual" business of his employer, and cites Georgia Casualty Co. v. Gibson (Tex. Civ. App.) 11 S.W.(2d) 191; Continental Paper Bag Co. v. Bosworth (Tex. Com. App.) 276 S. W. 170; Janes Contracting Co. v. Home Life & Accident Co. (Tex. Civ. App.) 245 S. W. 1004; Sheek v. Texas Co. (Tex. Civ. App.) 286 S. W. 336; Texas Employers' Insurance Association v. Price (Tex. Civ. App.) 300 S. W. 667. Each of these cases is interesting, but scarcely aids in the solution of the present difficulty. They relate to scope of employment and immunity of employee from lapses between employer and insurer, and otherwise turn upon different shadings of facts.

I reach the conclusion with great reluctance, but must read the policy in the present case in the light of and in conjunction with the Texas statute, and in harmony with the decisions of the highest court of the state.

The erection of a new building by workmen called for that purpose, in which the employer proposes to carry on an established business, cannot be said to be in the "usual" course of such business as he was already carrying on. It is the unusual. It is the extraordinary. This employer was not engaged in the building of elevators, nor in the building of hoppers therefor, but it was engaged in the business of grain and groceries. Such business had reached the proportion that it seemed wisdom to add the elevator feature, and the building therefor was being constructed by additional workmen, one of whom, while in such work, was injured.

Our deep solicitude for those who make our industrial world so splendid demanded their protection from the hazards of the courthouse when they suffered injuries while engaged in their work. That the law having that purpose in view should be liberally construed, so as not to rob them of any of its protective features, has made me reluctant to reach this conclusion, but the conclusion is inescapable, and the court merely speaks the law as it is written.

The agreement between the insurer and the employer contains a second clause, quoted above, marked "one (b)." This is a guaranty to the employer outside of the Compensation Law, and holds the employer harmless against any action brought by an employee at common law, because of the negligence of the employer. The language of the policy demands that this clause be in harmony with the specifications, which enumerate the different sorts of work that employees are permitted to do while the employer is protected by the insurance, as, for instance, the right of the employee to engage in repairing and altering the premises.

This protection against a common-law liability runs entirely to the employer, save and except that the employee is guaranteed the fruiting of his claim or judgment by the provision that the bankruptcy or insolvency of the employer shall not defeat him. This construction gives harmony to the entire insurance contract, and does not violate the word of the statute nor the word of the contract.

The motion of the defendant is granted.