**TEXAS EMPLOYERS' INS. ASS'N v. WRIGHT.**

No. 11331.

Court of Civil Appeals of Texas. Dallas.

Jan. 14, 1933.

Rehearing Denied Feb. 11, 1933.

James P. Swift, of Dallas, for appellant.

Webb & Webb, of Sherman, for appellee.

LOONEY, J.

This is a compensation case. Texas Employers' Insurance Association, insurance carrier for Diamond Mill & Elevator Company, subscriber, appealed from an adverse judgment in favor of Charles C. Wright, employee, rendered in his suit to set aside the final decision of the Industrial Accident Board, and to recover full compensation in a lump sum for alleged injuries. The material facts are these: When injured, Wright was, and for a number of years had been, in the service of Diamond Mill & Elevator Company, as sweeper in its milling plant at Sherman, Tex., where the company was engaged in the manufacture and sale of flour and feed stuff; that during August, 1931, the company had under construction at its said plant a frame building, to be used in the manufacture of sweet feed, the construction being under the supervision of a Mr. Pumphrey, foreman, and in furtherance of said enterprise, Wright was directed by the employer to work on the outside under the directions of Pumphrey, the nature at the time being foundation work, and, when injured, Wright and a fellowman employee by the name of Reed were carrying a bundle of metal rods, about twelve feet in length, weighing about 200 pounds, used to reinforce concrete; Reed was walking in front, one end of the bundle resting upon his shoulder, Wright following with the other end upon his shoulder, stepped into a mud hole, and, struggling to keep from falling, wrenched his back and sustained the injuries for which he claimed compensation.

■ Appellant contends that the record being silent as to the amount appellee claimed before the Industrial Accident Board, and his petition failing to allege necessary jurisdictional facts, the court erred in not sustaining exceptions urged to the petition.

Appellee alleged the nature of his injuries, that is, that he was totally and permanently incapacitated to labor; that his average weekly wage was $15; that he had in due time filed his claim for compensation with the Industrial Accident Board; that the matter in controversy exceeded the sum of $500; and prayed for the recovery of a lump sum judgment for $3,000.

These allegations are sufficient. The amount in controversy need not be alleged in dollars; it is sufficient if the character of the injury is described, jurisdiction being determined by the maximum amount of compensation the law allows for such an injury. Texas Employers' Ins. Ass'n v. Nunamaker (Tex. Civ. App.) 267 S. W. 749, 751; American Employers' Ins. Co. v. Scott (Tex. Civ. App.) 33 S.W.(2d) 845, 847, and the authorities there cited.

Appellant's main contention is: "That the undisputed facts as disclosed by the record in this case, and upon which reasonable minds could not differ, conclusively show that at the time and upon the occasion of his alleged injuries, Charles C. Wright was engaged in assisting in the construction or erection of a new sweet feed plant, and that such employment was not within the 'usual course of business, trade, profession or occupation' of the Diamond Mill & Elevator Company which was engaged in the business of milling flour and other products."

The purpose of the compensation law is to provide speedy, equitable relief to an employee injured "in the course of his employment," or beneficiaries in case of his death. The term "employee," includes "every person in the service of another under any contract of hire, expressed or implied, oral or written, * * * except one whose employment is not in the usual course of trade, business, profession or occupation of his employer." See section 1, art. 8309, R. S.

Injuries compensable under the law are defined thus: "The term 'injury sustained in the course of employment,' as used in this law, shall not include: * * * [Here follows list of injuries not compensable], but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." See definition of compensable injuries, section 1, second subd. 4, art. 8309, R. S.

The leading authorities relied upon by appellant are: Oilmen's Reciprocal Ass'n v. Gilleland (Tex. Com. App.) 291 S. W. 197, 199; Morse v. New Amsterdam Cas. Co. (D. C.) 30 F.(2d) 974, 976, same case affirmed by Circuit Court of Appeals, 37 F.(2d) 100. The question in the Gilleland Case was whether a bricklayer, not regularly in the service of a laundry company but called in for the particular purpose of walling up a cistern, was an employee within the meaning of the law, section 1, art. 8309, R. S. Judge Powell, for the commission, stated the question involved as follows: "Therefore we come now to a consideration of the holding by the Court of Civil Appeals that Gilleland, when killed, was in the usual course of his employer's business. This is the one and only question in this case, as shown by the briefs of all the attorneys." Holding that, under the facts, Gilleland was not an employee, the commission recommended that recovery be denied. This recommendation was approved by the Supreme Court, but the holdings of the commission on the questions discussed were left unapproved.

The Morse Case, by Atwell, District Judge, was similar on the facts to the Gilleland Case; the defense urged being that the men called in by the elevator company to erect a new building were not employees within the meaning of the Compensation Law. Sustaining this contention, Judge Atwell cited and followed the Gilleland Case, saying, among other things: "That the erection of a new building by workmen called for that purpose, in which the employer proposes to carry on an established business, cannot be said to be in the 'usual' course of such business as he was already carrying on. It is the unusual. It is the extraordinary. This employer was not engaged in the building of elevators, nor in the building of hoppers therefor, but it was engaged in the business of grain and groceries. Such business had reached the proportion that it seemed wisdom to add the elevator feature, and the building therefor was being constructed by additional workmen, one of whom, while in such work, was injured." Judge Atwell stated that he felt impelled to follow the Gilleland

Case, because it was a decision by the highest court of the state on a purely local law.

■ It will be observed that neither Gilleland nor Morse was in the service of the employer prior to the work at which he was engaged when injured. This fact distinguishes these cases from the case at bar, as it is undisputed that when Wright was detailed by his employer to assist, under the direction of Pumphrey as foreman, in construction work on the new building, he was, and had been, for at least eight of the ten preceding years, employed as sweeper in the milling plant, and when injured was engaged in services of a different nature under orders of the employer. So the question presented here is, Did Wright's injury have its origin in the work or business of the employer, and was it received while he was engaged in and about the furtherance of the affairs or business of his employer?. To ask the question, we think, in view of the undisputed facts, is to answer in the affirmative; the jury so found, and we adopt their finding as our conclusion of fact on that issue.

■ It is generally held that a regular employee, directed by the employer to engage for a time or on an occasion in unusual work, receiving injuries while so engaged, is nevertheless entitled to compensation under the law, provided the unusual engagement is in or about the furtherance of the affairs or business of the employer. This doctrine ruled the following cases: Commercial Cas. Ins. Co. v. Strawn (Tex. Civ. App.) 44 S.W. (2d) 805, involved these facts: Strawn, city salesman in Dallas for the General Tire Service, Inc., was directed by its general manager to entertain certain prospective customers, by taking them on a duck hunt, and being severely injured in an automobile accident, while returning from the hunt, claimed compensation for said injuries. The record disclosed that it was a custom of the employer to entertain prospective customers at places of amusement. The insurance carrier contended that the employee was not entitled to compensation because not injured in the course of his employment. The Waco Court of Civil Appeals, denying this contention, affirmed a judgment awarding compensation, and the Supreme Court refused a writ of error. In Constitution Indemnity Co. v. Shytles, 47 F.(2d) 441, 444, the Circuit Court of Appeals had a similar case; there Shytles, regularly employed as manager of a local theater in Fort Worth, was directed by his general manager to visit the San Angelo airport, as a representative of the theater in an aerocade, and while flying to San Angelo on this mission was killed. The contention of the insurance carrier was that the facts did not present a compensable case, because, when killed, deceased was not employed in the usual course of trade, business, profession, or occupation of the employer.

This contention was denied, and in disposing of the case Judge Hutcheson used the following language in point:

"The employment must be in the business which is usual to the employer, and this is determined by the nature and character of that business and the contract of employment. Nothing in the statute nor in the policy requires that the particular activities of an employee in carrying on that business have the quality of usualness or repetition; he might conceivably do a different thing each day.

"One employed in the usual business of his employer is just as fully covered when the acts which are done by him in carrying it out are the occasional and unusual as when they are the usual, provided the employment is general in the business, as this one was, and the acts are within the reasonable scope of that employment and in furtherance of that business.

"To say that a theater manager killed while on an airplane trip to advertise and obtain trade for his theater, with the consent and approval of his employer and on his employer's pay, comes within the exception of the statute excluding an employee as 'not in the usual course of' that company's business, would be to deny the reality of the occurrence, and, because the particular incident was unusual, to close the eyes to the the usualness of its general character, that is, advertisement and trade promotion."

The case of Solar-Sturges Mfg. Co. v. Industrial Commission, 315 Ill. 352, 146 N. E. 572, arose under the Compensation Law of Illinois. The employee, an ice cream salesman in the city of Chicago, had an allowance to be expended for cigars used in soliciting business, received injuries, for which he sought compensation, while on a trip to purchase cigars for such purpose. The claim was contested on the ground that injuries received under the circumstances did not arise from or in the course of the employment. This contention was denied in a few words; the court said: "The injury received under these circumstances 'arose out of and in the course of his employment.'" To the same effect, see Illinois Pub. & Printing Co. v. Coates, Industrial Commission, 299 Ill. 189, 132 N. E. 511; McNaught v. Hines, 300 Ill. 167, 133 N. E. 53; Porter Co. v. Yentzer, Industrial Commission, 301 Ill. 76, 133 N. E. 652.

█ The following from Schneider, in his work on Workmen's Compensation Law (vol. 1, sec. 23, p. 111), fairly represents the concensus on the point; he says: "It would appear therefore that if the work being done may properly be within the ordinary expectation or contemplation of the parties as being necessary or proper for the employee to do, to aid in carrying out either directly or indirectly the main purpose or business of the employer, even though the employee steps aside from his usual work to do this unusual or isolated act or work, he should nevertheless receive compensation when injured in such work."

The construction of the Compensation Law contended for by appellant would lead to this situation: An employee being directed by the employer to engage for a time in a character of work out of the ordinary, yet of a nature in furtherance of the employer's business, is, under stress of these circumstances, compelled to choose between obedience and disobedience, that is, obedience at the risk of forfeiting the protection the Compensation Law affords, or disobedience at the risk of being discharged from employment; the law with such meaning would be difficult of administration, and its protection to wage-earners uncertain and elusive.

We think appellee's injuries were compensable; therefore affirm the judgment of the trial court.

Affirmed.

BOND, J., dissents.

BOND, J. (dissenting).

I cannot concur in the conclusion of this court. Appellant, Texas Employers' Insurance Association, under the Workmen's Compensation Laws of Texas, made a contract with and issued a policy to the Diamond Mill & Elevator Company, of Sherman, Tex., indemnifying it against liability for injuries to its employees arising in the course of their employment, and agreed to pay the compensation provided for under the law. The terms and conditions of the policy, and the classification of the hazards which appellant assumed are specified in the law, and must be considered as being embodied in the policy of indemnity. It cannot be presumed that appellant agreed to do more than that which it was compelled to do under its policy, and within the scope of the law. It must be observed that the terms of the policy limited the liability of the insurer to injuries suffered by an employee of the Diamond Mill & Elevator Company while engaged in the "usual course of trade, business, profession, or occupation" of the milling company. The hazards which appellant contracted to insure, and to which the Diamond Mill & Elevator Company assented in accepting the policy, are those incident to and in furtherance of the usual business of the milling of flour and other products, and those hazards which might reasonably be anticipated as being incident to, and in furtherance of, that business. The usual business of the Diamond Mill & Elevator Company was that of milling flour and mill products. The insurer knew the risk and hazards that it undertook

to indemnify, and the rate of premium applicable thereto. In consideration for such premium, appellant assumed such risk and hazards, and contracted to pay the compensation provided by law. The Diamond Mill & Elevator Company was not engaged in the business of erecting buildings, and it could not reasonably be anticipated by the insurer and by the party insured that it would be so engaged. Its business was that of milling flour and other products, and such was the usual business of the company. The erection of the building described in the evidence was unusual, and could not reasonably have been anticipated as being incident to, and in furtherance of, its milling business. It might have been reasonably anticipated that the milling company would, through necessity, make repairs and cause replacements, and even build additions to its business; but when it stepped aside from its usual business, and that which might have been reasonably anticipated as being incident thereto, and began the erection of a new and independent addition to its mill, the construction of a substantial building three stories in height, 72 feet in length, and 72 feet in width, it thereby took itself from the protection of the policy and outside of the purview of the law, and assumed liability to its employees for injuries sustained by them while engaged in or about the furtherance of its affairs or business.

I reached the conclusion with great reluctance; but I must read the policy and determine the contractual rights and responsibilities in the present case in the light of and in conjunction with the statutes, and in harmony with the decisions of the highest courts of the state. The case of Oilmen's Reciprocal Ass'n v. Gilleland (Tex. Com. App.) 291 S. W. 197, 201, and the authorities cited therein, and referred to by the majority of this court, is decisive of this case. In that case the court said:

"It is our view that the California court adopted the proper policy and refused to ignore this word 'usual' or give to it any unusual meaning. The ordinary meaning of the word 'usual' is given by Webster's New International Dictionary as follows: 'Such as is in common use; such as occurs in ordinary practice, or in the ordinary course of events; customary; ordinary, habitual; common.'

"The same dictionary tells us that the word is synonymous with 'accustomed, common, wonted, ordinary, regular.' It goes without saying that walling up a pit with brick is not in the ordinary course of the laundry business.

"In one word, it is clear that Gilleland was a bricklayer. Therefore he was unquestionably engaged in the usual course of his own business when killed. But, it is equally clear that he was not, in any sense, in the usual course of his employer's business at that time."

The employee Wright, in the instant case, at the time of his injury, was engaged in the furtherance of his employer's business; but I cannot say that he was engaged in the usual course of trade, business, profession, or occupation of his employer. It is immaterial whether he was a regular or a casual employee. It is not a question as to his contract of employment, but a question as to the business his employer had him engaged in at the time of his injury. In the above-cited case, the court quoted with approval the opinion of the Court of Civil Appeals, 285 S. W. 648, as follows:

"The Court of Civil Appeals in this case, in giving a history of the clause in the statute now under consideration, speaks as follows:

"'The Workmen's Compensation Act of Texas seems to have been fashioned very largely after the Massachusetts act. The original act in Massachusetts * * * in defining employee, excepted 'one whose employment is but casual or is not in the usual course of trade, business, profession or occupation of his employer.' This definition was adopted when the Texas law was enacted. Vernon's Sayles' Civil Statutes, art. 5246yyy. Later, after the Massachusetts law had been amended * * * eliminating the words 'but casual or is,' the Texas act in 1917 * * * was also amended so as to conform in this particular with the Massachusetts amendment. Vernon's Civil Statutes 1918, art. 5246—82. The effect of this amendment was to broaden and liberalize the scope of the act with reference to who should be classed as employees, and, as amended, one who is only casually employed is entitled to the benefits of the act if he is injured while in the usual course of the trade, business, profession, or occupation of his employer. R. S. art. 8309, § 1.'"

In the case of Employers' Liability Assurance Corporation v. Cook, 281 U. S. 233, 50 S. Ct. 308, 309, 74 L. Ed. 823, Cook was a regular employee of the Ford Motor Company, and as a part of his contract of employment was assisting in unloading cargo from a ship when on navigable water, and while so engaged on the ship he was injured. He was under the instruction from the Ford Motor Company to assist in unloading the ship. In the instant case, Wright was a regular employee of the Diamond Mill & Elevator Company and was engaged in assisting in the construction of a substantial building, and was under the instructions from his employer. The Supreme Court, in that case, said: "Whether Cook's employment contemplated that he should work regularly in unloading vessels or only when specially directed so to do is not important." It further held

that, since the unloading of vessels anchored on navigable waters was outside the purview of the Workmen's Compensation Laws of Texas, it was unimportant whether the unloading of such vessel was a part of the regular employment of Cook.

The law also excludes coverage of one whose employment is not in the usual course of trade, business, profession, or occupation of his employer. Article 8309, § 1, R. S. 1925. It was unimportant whether the construction of the building was a part of the regular employment of Wright. Was it the usual business of the milling company?

The employee Wright has his remedy against his employer, under the Workmen's Compensation Laws of Texas. For the reasons assigned, I respectfully dissent, and believe that this cause should be reversed and rendered.