(No. 14012.—Judgment affirmed.)

THE ILLINOIS PUBLISHING AND PRINTING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (ALICE H. COATES, Defendant in Error.)

*Opinion filed October 22, 1921.*

1. WORKMEN'S COMPENSATION—*compulsory provision as to hazardous occupations is based upon police power.* The compulsory feature of the Compensation act of 1917, which brings all employers under the act who are engaged in hazardous occupations, is based squarely upon the police power of the State and does not depend in any way on the contractual relation of master and servant.

2. SAME—*section 3 of the act of 1917 includes all employers in hazardous occupations, regardless of particular work of employee when injured.* The provision of section 3 of the Compensation act of 1917 applying the act automatically to all employers engaged in the businesses declared therein to be extra-hazardous is general in its application and embraces all employers and their employees where the employer's business is such as to be included in said section, regardless of the particular kind of work in which the employee was engaged at the time of his injury.

3. SAME—*theory and purpose of compensation acts.* The theory and purpose of workmen's compensation acts are to provide speedy and equitable relief in case of injury to those exposed to the peculiar hazards of certain businesses and enterprises generally known to be hazardous.

4. SAME—*provision of Compensation act not invalid because it includes employees not exposed to particular hazard.* Section 3 of the Compensation act of 1917 is not unconstitutional when construed to include all employees where the employer is engaged in a hazardous occupation regardless of the employees' duties, as the State has authority to classify employees in groups identified by the business of the employer, without regard to whether the employees are exposed to the special hazards of the employer's business.

5. STATUTES—*court cannot read into statute words not found therein.* The plain and obvious meaning of the language used by the legislature is the safest guide to follow in construing any act, as the court has no right to read into the statute words that are not found therein, either by express inclusion or by fair implication.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

ROY D. KEEHN, (EDWARD G. WOODS, and CHARLES CENTER CASE, of counsel,) for plaintiff in error.

GEORGE D. ANTHONY, (GEORGE A. SCHNEIDER, of counsel,) for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Philip A. Coates, deceased, was employed by the Illinois Publishing and Printing Company as an advertising solicitor for the *Chicago Herald and Examiner,* a newspaper published by it. He went from place to place in the city of Chicago and elsewhere for the purpose of securing advertising to be published in said newspaper. He was paid $50 a week and allowed an expense account. Deceased used his own automobile in making his calls and was permitted to place on his expense account a charge for automobile transportation. October 21, 1919, he reported for duty about 8:30 in the forenoon and was directed by the advertising manager to call upon certain prospects. Pursuant to these directions he started in his own automobile to make his calls. While he was driving on the public streets of Chicago he was killed in a collision between his own car driven by him and another car driven by Abraham Rubenstein. Compensation was claimed and awarded on the theory that the enterprise or business of the employer was extra-hazardous within the meaning of paragraph 8 of section 3 of the Workmen's Compensation act, (Laws

of 1919, p. 539,) and that the provisions of the act applied automatically to the employer and all its employees. This writ of error is prosecuted to review the judgment of the circuit court of Cook county confirming the award of the Industrial Commission, the contention of plaintiff in error being that decedent was not engaged in any of the hazardous occupations mentioned in section 3.

Section 3 of the Compensation act of 1919 provides that the provisions of the act shall apply automatically and without election to all employers and their employees engaged in any of the enterprises or businesses which are declared by the act to be extra-hazardous. It is admitted that plaintiff in error is engaged in an enterprise in which statutory and municipal ordinance regulations are imposed for the regulating and guarding of machinery and appliances for the protection and safeguarding of its employees and the public. There are located in the ten-story building which it occupies, typesetting machines, printing presses and other machinery used in printing a newspaper, and electrically propelled elevators used for carrying passengers and freight from floor to floor. It is contended by plaintiff in error that the only employees covered by the act are those directly exposed to the hazards peculiar to the business or enterprise of the employer, and that it does not cover such employees as salesmen, book-keepers and stenographers, who are not exposed to the special hazards. It is contended by defendant in error that if an industry is covered by the terms of a compulsory compensation law based upon a hazardous classification it is covered as to all the· employees therein, regardless of whether or not they are all actually exposed to the peculiar hazards of the business. The determination of this question is one of far-reaching effect. To adopt the theory of defendant in error is to extend the provisions of the act to a class of employees, thousands in number, not heretofore considered to be covered by the provisions of the act, while to adopt the

theory of plaintiff in error is to exclude this large group of employees from the beneficent provisions of the act.

Prior to July 1, 1917, any employer in this State had a right to elect whether he would provide and pay compensation for accidental injuries sustained by his employees arising out of and in the course of the employment in accordance with the provisions of the act. The act of 1913 as originally adopted and as amended in 1915 enumerated certain occupations, enterprises and businesses which brought the employer engaged in any of them under the act unless he filed notice in writing of his election not to provide and pay compensation according to the provisions of the act. Under these elective statutes this court has held in several cases that some employees of an industry might be covered by the act while other employees engaged in a different branch of the business or enterprise might not be covered by the act. In *Vaughan's Seed Store* v. *Simonini,* 275 Ill. 477, the employer had several branches or departments in its business. Without deciding whether one or more of these branches of the employer's business came within the enumerated businesses or enterprises of section 3 of the Compensation act of 1913, this court held that a laborer employed upon one of its farms was not engaged in one of the enumerated occupations. The employer had not elected to provide and pay compensation under the provisions of the Compensation act, and it was not subject to the jurisdiction of the Industrial Board unless it was engaged in an occupation, enterprise or business enumerated in section 3 of the act. Its election to be covered by the act was entirely voluntary, and the theory of the decision was that the employer ought not to be presumed to elect to provide and pay compensation according to the provisions of the act except as to that branch or department of its business which was declared by the statute to be hazardous. In *Oriental Laundry Co.* v. *Industrial Com.* 293 Ill. 539, a solicitor for laundry business slipped and fell on an

icy sidewalk some distance from the laundry. The laundry company had not elected to provide and pay compensation under the act, and the court held that the work of the solicitor was not in any way connected with the hazardous part of the laundry company's business and that the Industrial Commission was without jurisdiction to award compensation to her. In that case we specifically stated that the decision was made under the elective features of the Compensation act, and that we were not intending in any way to determine the effect of the compulsory features of the act in effect on and after July 1, 1917. In *Singer Sewing Machine Co.* v. *Industrial Com.* 296 Ill. 511, (a case arising since the compulsory feature of the Compensation act became effective,) the point 'here under consideration was not discussed and it does not seem to have been raised. The decision, therefore, is not controlling in the case now before us.

It seems to be well established by this court that it is the business or enterprise of the employer that controls. In *Suburban Ice Co.* v. *Industrial Board,* 274 Ill. 630, the employer was engaged in the business of manufacturing, storing and selling ice. Its business was among those declared by statute to be extra-hazardous. One of its teamsters while feeding a team in its barn was kicked in the head by one of its horses and killed. It was contended that the accident did not arise out of and in the course of employment in that branch of the business declared to be extra-hazardous, but this court held that the business of the employer controlled and that the Industrial Board had jurisdiction to award compensation. In *Gibson* v. *Industrial Board,* 276 Ill. 73, the employers were engaged in selling and delivering gasoline. Their business was one declared to be extra-hazardous. One of their teamsters fell from the top of a tank wagon and was run over and killed. The employers were held liable to pay compensation. In *Chicago Dry Kiln Co.* v. *Industrial Board,* 276 Ill. 556, the

employer was engaged in drying lumber and operating plan-
ing mills. A watchman employed by it to guard its property
scuffled with an intoxicated fellow-employee and received
injuries for which compensation was awarded. The busi-
ness or enterprise in which the company was engaged was
one declared by the statute to be extra-hazardous and the
award was confirmed. In *Pekin Cooperage Co.* v. *Indus-
trial Board,* 277 Ill. 53, the employer was engaged in a
business declared to be extra-hazardous. An employee was
injured as the result of "horseplay," and this court con-
firmed the award granting compensation. In *Friebel* v. *Chi-
cago City Railway Co.* 280 Ill. 76, this court held that an
employee engaged by a furniture company to haul by auto-
mobile truck furniture from its warehouse to its customers
was engaged in work connected with the business or enter-
prise of his employer declared by the Compensation act to
be extra-hazardous and that his right to compensation was
controlled by the provisions of the Compensation act. In
*Hahnemann Hospital* v. *Industrial Board,* 282 Ill. 316, it
was held that the business or enterprise of conducting that
particular hospital was one declared by the Compensation
act to be extra-hazardous, and compensation awarded on
account of the death of an employee who fell down a stair-
way into the basement was confirmed.

In all these cases it will be seen that the injury to the
employee was not due to the hazard peculiar to the business.
To illustrate: In the *Suburban Ice Co. case* it was the
machinery in the ice plant and the operation of the ice
storage house that brought the business of the employer
within the act, but the employee's injury was not caused by
the hazards peculiar to the ice plant or to the warehouse
but by the kick of a horse—a hazard common to all indus-
tries where horses are used. In the *Gibson case* it was the
handling of explosive materials that brought the employers
under the act, but the employee was not injured by the
explosion of gasoline but by being run over by an empty

gasoline tank wagon—a hazard common to all teamsters. In the *Chicago Dry Kiln Co. case* it was the machinery in the planing mill that brought the employer under the act, but the employee was not injured by this machinery and his death was not due to a hazard peculiar to the business. In the *Pekin Cooperage Co. case* the employer was brought under the act because power-driven machinery was used in its plant, but the employee was injured by being thrown onto a cement floor by fellow-employees while waiting in line for his pay. In the *Friebel case* the injury to the employee did not grow out of any of the hazards due to the business of operating a warehouse but it was occasioned by a collision between a street car and a truck with which the employee was working; and in the *Hahnemann Hospital case* it was not because the hospital building was seven stories high and had in it an electrically-operated elevator that the employee was killed but the death resulted from his slipping and falling into the basement, as he might have done in his own home. This court has therefore long ago established the proposition that the jurisdiction of the Industrial Commission is to be determined by the business or enterprise of the employer and not by the particular kind of work or the particular thing that the employee may be doing at the time of the injury.

The present compulsory law is based squarely upon the police power of the State (*Grand Trunk Western Railway Co. v. Industrial Com.* 291 Ill. 167,) and does not depend in any way upon the contractual relation of master and servant. In *People v. Elerding*, 254 Ill. 579, we had under consideration the act regulating and limiting the hours of employment of females in hotels and other places. The object of the law was to preserve the health, strength and vigor of the women of the State. It was contended that the work in Elerding's hotel was light and that the female employees suffered no ill-effects because they were on duty longer than ten hours a day. We held that the act was

not separable but was general in its application and em-
braced all hotels and their female employees. The principles
announced in that case are applicable to the case at bar.
This compulsory Compensation act is general in its appli-
cation and embraces all employers and their employees en-
gaged in businesses or enterprises declared by the statute
to be extra-hazardous. The language of the act is clear
and is not open to construction. It means just what it
says—the provisions of this act shall apply automatically
and without election to all employers and their employees
engaged in enterprises or businesses declared to be extra-
hazardous—and the court has no right to read into the
statute words that are not found therein, either by express
inclusion or by fair implication. The plain and obvious
meaning of the language used by the legislature is gen-
erally the safest guide to follow in construing any act.
Seeking hidden meanings at variance with the language
used is a perilous undertaking, which is as apt to lead to
an amendment of a law by judicial construction as to arrive
at the actual thought in the legislative mind.

   We turn now to the question which naturally arises in
our minds: Is the act, when construed to include all em-
ployees of a business declared to be hazardous, regardless
of whether they are all actually exposed to the peculiar
hazards of the business, constitutional? Let it be said at
the outset that we are not concerned with the wisdom of
the law. This question is so pre-eminently one for the
law-making branch of the government that the courts will
interfere only where there can be but one opinion as to the
mischievous tendencies of the act. In making this act a
part of the law of this State the legislature has used plain
language, and if it did not mean what it said, then it, and
not this court, must change the language. The theory and
purpose of workmen's compensation acts are to provide
speedy and equitable relief in case of injury to those exposed
to the peculiar hazards of certain businesses and enterprises

generally known to be hazardous, (*Grand Trunk Western Railway Co.* v. *Industrial Com. supra,*) and at first thought it seems arbitrary and unreasonable to extend the protection of the act to that group of employees of a given industry that is not exposed to the hazards peculiar to the industry. On the other hand, how difficult of administration the act becomes when the courts must determine in each case which employee is and which employee is not exposed to the hazards of the business! This difficulty becomes apparent at once when we consider the cases hereinbefore discussed. It is for the law-making body to determine in the first instance what employers and employees shall be brought within the limits of the act, and we are not prepared to say that there is not some basis for including within its provisions solicitors and salesmen whose work is largely outside the plant. These employees, because of the nature of their business, are compelled to expose themselves to the hazards of the street and to the hazards of automobile and railroad transportation much more than the general public. In the case at bar it was the business of the employer that brought deceased to the place where he was killed, and the work in which he was engaged was just as essential to the operation of the employer's business as the work of the linotype operator or the pressman. The authority of the State to classify employees in groups identified by the business of the employer, without regard to whether the employee is exposed to the special hazards of the employer's business, has been upheld by the Supreme Court of the United States. (*Louisville and Nashville Railroad Co.* v. *Melton,* 218 U. S. 36, 30 Sup. Ct. 676; *Mobile, Jackson and Kansas City Railroad Co.* v. *Turnipseed,* 219 U. S. 35, 31 Sup. Ct. 136.) The act is not subject to constitutional objection.

The judgment is affirmed.          *Judgment affirmed.*