(No. 14840.—Judgment affirmed.)

THE READY & CALLAGHAN COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(LOTTIE HANSEN, Defendant in Error.)

*Opinion filed December 19, 1922.*

1. WORKMEN'S COMPENSATION—*when employer is liable because of acceptance of provisions of Compensation act of 1913.* Where an employer, by letter written in 1913, has notified the Industrial Board of his desire to "be under the new law of Workmen's Compensation act," and has made no rejection of the act after its subsequent amendments up to the time of the accidental injury, in 1919, for which compensation is claimed, but has assumed that the injured employee was under the act, such acceptance renders the employer liable although he conducts two separate businesses, one of which is hazardous and one not, and the employee was engaged in the non-hazardous business.

2. SAME—*when employee is in the line of his employment when injured.* An employee of a retail coal dealer, who was hired as

foreman of the company's yards and directed the loading of the wagons, is injured in the line of his employment when he is run over by a wagon while trying to stop a team of his employer from running away while in the yard.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

GALLAGHER, KOHLSAAT, RINAKER & WILKINSON, for plaintiff in error.

GEORGE W. CULLEN, (JOHN V. McCORMICK, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Edward Hansen was foreman for the Ready & Callaghan Coal Company, which was engaged in the retail coal business. The company was also doing a general business, with practically the same employees, of paving, excavating and general teaming. Hansen had been working for the company as such employee for over a year and a half. On February 28, 1919, he was killed while in such employ in the yards of the company at 4644 South Halsted street, in Chicago. A claim was filed by his widow, and the Industrial Commission and the arbitrator allowed an award of $12 a week for 333⅓ weeks under paragraph (*a*) of section 7 of the Workmen's Compensation act as amended. The proof showed that he left two small children surviving him, who were to share the award allowed in favor of the widow. On review the circuit court confirmed the finding of the commission. This writ of error has been sued out to review the judgment of the circuit court.

The testimony shows that on the day Hansen was injured he was acting as foreman of the company's yard; that shortly before noon on the day in question Louis Chrupka, a teamster who hauled coal for the company, came into the

yard with his team and left it standing while he went in the office to turn in some money to the concern; that Hansen, whose duties were to give instructions to such employees as Chrupka, told him there was not much to do and that he better put the team in the barn; that when Chrupka started to do so he was called back by Hansen for a further talk, still leaving his team standing in the yard; that it was a muddy, rainy day and the team was restless; that while Chrupka was in the office the team started to run away and Chrupka and Hansen both started for it; that Hansen reached the team before Chrupka did and caught the bridle of one of the horses, and as he did so the horse jumped and swayed and he lost his hold and was thrown to the pavement, both wheels of the wagon passing over him; that he was picked up by Ready and others, a doctor and ambulance were summoned, and he was carried to the hospital but died on the way. Chrupka caught the back of the wagon and held on for a time but could not retain his hold, and the horses ran several blocks before they were stopped.

There is no question about the accident or that Hansen was an employee of the Ready & Callaghan Coal Company in its retail coal business, that a demand for compensation was made in proper time by Hansen's representatives under the Workmen's Compensation act and an award in their favor under the statute. The sole question raised by the Ready & Callaghan Coal Company is that Hansen, while employed by the company in the operation of a retail coal yard, was not engaged in an extra-hazardous business and was not subject to the Workmen's Compensation act.

It appears from the record that in the business of the Ready & Callaghan Coal Company the men employed by it were sometimes engaged in one line of work and sometimes in another, interchangeably, and that teams were likewise used interchangeably, both in hauling coal and also in paving, excavating and general teaming, though some of such teams were used exclusively in coal hauling. The record

shows that the team that killed Hansen was used for both purposes. At the time of the accident the company was using twenty-seven teams. It was Hansen's duty to look after the teams in a superintending capacity, to see that the wagons were loaded and to look after the cars, having the general duties of a yard man. After a teamster went to the office of the company to get his ticket he then went to Hansen and his wagon was loaded with coal. Hansen, in the line of his employment, was authorized to hire certain laborers in the yard, and helped in the loading and unloading of coal when there was insufficient help. Apparently, outside of his general duties in looking after the teams that were employed in both lines of business, his duties were confined to the coal yard.

It is contended by counsel for defendant in error that plaintiff in error elected to accept the Workmen's Compensation act in 1913 in all its departments; that it took out insurance which would cover the claim in question, and that when Hansen's representatives filed a claim with the commission the matter was turned over by plaintiff in error to Sherman & Ellis, the agents of the insurance company which insured plaintiff in error as to such claims, and thereafter before the Industrial Commission plaintiff in error recognized, as shown by the record, its liability on this particular claim; that as certain of plaintiff in error's business was automatically brought under the act by its acceptance, and as there was never any revocation of such election, its election at the time of the accident, in 1919, was still in force. Previous to its amendment in 1917, section 3 of the Workmen's Compensation act was interpreted by this court to the effect that if the business of the employer was extra-hazardous but an employee was injured while doing work in a department that was not extra-hazardous the employee was not within the act, (*Mattoon Clear Water Co.* v. *Industrial Com.* 291 Ill. 487; *Seggebruch* v. *Industrial Com.* 288 id. 163;) but since the amendment of 1917 all depart-

ments of an extra-hazardous business are within the act and all employees in every department are automatically brought under the act without election of the employer. (*Illinois Publishing Co.* v. *Industrial Com.* 299 Ill. 189; *McNaught* v. *Hines,* 300 id. 167.) In this case a new question has arisen since the amended Workmen's Compensation act went into force in 1917,—that is, where the employer conducts two separate businesses, one of which is hazardous and one not, and an election was made as to the hazardous business before the amendment of 1917, and an employee in the non-hazardous business is injured, is the employer liable? Counsel for defendant in error argue that whether or not there is liability under such circumstances, there can be no question that on the record in this case plaintiff in error elected to come under the 1913 Workmen's Compensation act as to its entire business.

It appears from the record that on July 22, 1913, the Ready & Callaghan Coal Company sent the following letter:

*"July 22, 1913.*
*"Industrial Board, Bureau of Labor Statistics, Springfield, Ill.:*
"GENTLEMEN—We wish to state that we wish to comply and be under the new law of Workmen's Compensation act, and hereby notify you to that effect. We remain
Yours respectfully,
READY & CALLAGHAN COAL CO.,
Michael Ready, *President."*

The files of the Industrial Commission show, as found in this record, the following: "Election Ready & Callaghan Coal Company, 133 West Washington street, Chicago; filed July 22, 1913; filed March 10, 1916." There was also in the files of the Industrial Commission, on the form known as "Employer's written acceptance," an election filed March 10, 1916, by the Ready & Callaghan Coal Company, for "operation of steam shovel for street, road and basement work," and a copy of the letter by which the receipt of said election was acknowledged by the Industrial Board. There

was also testimony that no rejection of the act by the Ready & Callaghan Coal Company is in the commission's files.

It is apparent on this record that the files of the Industrial Commission intended to show and treat the Ready & Callaghan Coal Company as electing to come under the Workmen's Compensation act. Such a conclusion should be so reached from the records of the Industrial Commission under the reasoning of this court in *Willett Co.* v. *Industrial Com.* 287 Ill. 487. While the court held in that case that although the Workmen's Compensation act does not require the notice as to election to be in any precise or technical form, it is plain that the letter of July 22, 1913, to the board from plaintiff in error could be considered as a request to be immediately under the act and was considered by the Industrial Commission as an acceptance on and after its receipt. This conclusion is strengthened by the acts of the Ready & Callaghan Coal Company, and by its representatives, after the accident in question. If the company did not understand that the act of acceptance would apply to all of its business, it is difficult to see why Sherman & Ellis, who represented plaintiff in error, negotiated in regard to a settlement with Hansen's representatives; or why plaintiff in error, in answer to a letter from John V. McCormick, as attorney for Hansen's heirs, asking for compensation for Hansen's death, wrote him saying: "We have forwarded your letter of the 13th inst. to Messrs. Sherman & Ellis, 11 S. LaSalle street, who carry our accident insurance covering the above case;" or why Sherman & Ellis sent a letter to McCormick in which they said, after giving the title of the claim as Edward Hansen *vs.* Ready & Callaghan Coal Company: "Your letter of May 13 in the above case received and carefully noted. May we request that you call at the office any afternoon after two P. M. and we will be glad to go over the files with you?" It appears from the record that after receiving this letter McCormick went to Sherman & Ellis and had several conferences with Camp-

bell, of that firm, and told him the facts about the case and made a demand for compensation; that later there was a petition filed with the Industrial Commission for settlement, at the hearing of which Campbell was present. It is apparent from the record that up to the time the application was filed before the Industrial Commission all parties considered and assumed, as apparently did the Industrial Commission, that Hansen was under the act and that plaintiff in error was liable for his death. We think it is clear on this record that plaintiff in error should be held liable under an acceptance of the Workmen's Compensation act in its letter written in July, 1913, and that to hold otherwise would be contrary to the reasoning in *Ellsworth* v. *Industrial Com.* 290 Ill. 514, *Paul* v. *Industrial Com.* 288 id. 532, and *Willett Co.* v. *Industrial Com. supra;* see, also, *Piatt* v. *Swift & Co.* 188 Mo. App. 584; *In re Cox,* 225 Mass. 220.

The above being our conclusion, it is unnecessary to consider or discuss the point raised by counsel for defendant in error that plaintiff in error having failed to argue in its petition for writ of error as to whether or not the injury arose out of and in the course of the employment of the deceased, and not having raised that question before the Industrial Commission, waived its right to raise that question later in this court. It appears without dispute that Hansen was the foreman in charge of all the teams of plaintiff in error. It was a part of his duties to stop any one of the teams under his charge from running away. Under the reasoning of this court in *Baum* v. *Industrial Com.* 288 Ill. 516, and *Dragovich* v. *Iroquois Iron Co.* 269 id. 478, Hansen was trying to save the property of his employer, and he was therefore in the line of his employment.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*