M & J Diesel Locomotive Filter Corporation, an Illinois Corporation, Plaintiff-Appellant, v. Eugene M. Nettleton, Defendant-Appellee.

Gen. No. 64–99.

Second District.

March 26, 1965.

Stanley A. Durka, of Waukegan, for appellant.

Francis W. Faris, Jr., of Bellwood, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment in favor of the defendant after a trial before the court, without a jury. The plaintiff, M & J Diesel Locomotive Filter Corp., initiated this suit against defendant, Eugene M. Nettleton, individually, for rent and damages allegedly due from Nettleton as a holdover tenant. The defendant contended that the lease on which the holdover tenancy was based, was not executed by him in his individual capacity, but, rather, as president on behalf of the Midwest Building Supply Company, a corporation, herein called "Midwest."

The trial court admitted parol evidence as to the capacity in which defendant signed the lease. The plaintiff contended that the lease was not ambiguous, and that the trial court erred in admitting such evi-

dence, and in holding that the lease had been executed on behalf of Midwest.

The evidence, including parol, indicated that Midwest had occupied the premises in question from approximately 1950 to April of 1962. From 1950 to 1956 it was an unincorporated entity operating under the name "Midwest Building Supply" or "Midwest Building Supply Company." In 1956, it was incorporated under the name "Midwest Building Supply Company" and Nettleton, who had at all times operated the business, became its president.

While the business had leased these premises since approximately 1950, it did not begin leasing from the plaintiff until after the date of incorporation in 1956. The written lease, upon which plaintiff based its claim that defendant was a holdover tenant, was dated May 1, 1960, and was for a term of one year ending April 30, 1961.

This lease and a rider attached thereto, prepared by plaintiff, described the plaintiff as lessor and "Eugene M. Nettleton, d/b/a Midwest Building Supply" as lessee. Both the lease and rider contained signature lines describing the lessee as "Eugene M. Nettleton, d/b/a Midwest Building Supply by ———." The defendant, Eugene M. Nettleton, signed the lease and rider on the respective signature lines.

Both the lease and rider contained a signature line for a "Witness" to Nettleton's signature. There was no place by the lessee's signature for the attestation of a corporate secretary, but there was such a place opposite the lessor's signature line, above which appeared the word "Attest." The signature of Jeannette Faris, the corporate secretary of Midwest, appeared on both the lease and rider, on the line opposite the lessor's signature line, designed for attestation by the lessor's corporate secretary. She testified that she signed on those lines at the direction of Mr. Nettleton. It further

appears that no representative of the lessor was present when the lessee executed the lease.

It is undisputed that all of the checks in payment of the rental due under the lease were corporate checks of Midwest, signed by Jeannette Faris; and that the corporate business continued to occupy the premises after the term of the lease and up to April of 1962, at which time Midwest was adjudicated to be bankrupt.

■ At the outset, it is apparent that if there is ambiguity in the capacity in which this lease was executed by Nettleton, the ambiguity is latent. Our courts, on numerous occasions, have defined a latent ambiguity as one which occurs "where a writing appears on its face clear and unambiguous, but which, in fact, is shown by extrinsic evidence to be uncertain in meaning; . . . ." Allendorf v. Daily, 6 Ill2d 577, 590, 129 NE2d 673 (1955). Thus, if an ambiguity is latent, additional information has to be supplied to show the ambiguity. South Parkway Bldg. Corp. v. South Center Dept. Store, Inc., 19 Ill App2d 14, 19, 153 NE2d 291 (1st Dist 1958).

Here, the lease referred to Eugene M. Nettleton, who was doing business as an individual under the name and style of Midwest Building Supply, as Lessee. Without more, there would be no question concerning the personal liability of Eugene M. Nettleton. However, the extrinsic evidence indicated that when this lease was executed, Nettleton was not doing business under the name and style indicated; and that the business in question was then being conducted by a corporation, which bore the name of "Midwest Building Supply Company," and is herein called Midwest.

It is not sufficient, as plaintiff suggests, to treat the words "d/b/a Midwest Building Supply" as descriptio personae. These words did not merely identify or point out Nettleton as the person intended; they did more. They implied in their legal significance, that

149

Midwest Building Supply was an unincorporated business, owned and operated by Nettleton as a sole proprietorship, a statement that was contrary to the existing factual situation. Further, the evidence indicated that Nettleton did not lease these premises for his personal use, but that the premises had been occupied and used for a particular business use for some time by an entity which had been incorporated some four years prior to the execution of the lease. It is also significant that what, on its face, appears to be the corporate attestation of the secretary of the lessor, M & J Diesel Locomotive Filter Corp., is, in fact, the attestation of the corporate secretary of Midwest, placed there at the direction of Nettleton.

■■ The trial court, under these facts, did not err in admitting extrinsic evidence to aid in the construction of the lease. The language describing the purported lessee appeared clear, but could not be literally applied to the existing factual situation. Allendorf v. Daily, supra, 590; South Parkway Bldg. Corp. v. South Center Dept. Store, Inc., supra, 20; Great Northern Life Ins. Co. v. Federal Life Ins. Co., 260 Ill App 369, 377 (1st Dist 1931). The signatures cannot alone be looked to in determining who are parties to a lease. Rules of construction require that where the identity of the parties to the contract is not clear, all of the facts and circumstances surrounding the making of the contract may be considered to determine who are the actual parties. Midwest Grocery Co. v. Danno, 29 Ill App2d 118, 123–124, 172 NE2d 648 (1st Dist 1961).

This case is not unlike Freeport Journal-Standard Pub. Co. v. Ziv Co., 345 Ill App 337, 103 NE2d 153 (2nd Dist 1952) wherein the lessee was referred to as "Radio Station WFJS" and the lease was signed on lessee's behalf by an individual designated as "commercial manager." The trial court held that the plaintiff corporation, not named in the lease, and not the

individual signing the contract, was liable as lessee. It reached this conclusion after considering extrinsic evidence showing that the corporate plaintiff was the actual owner and operator of the radio station and after considering all of the facts and circumstances surrounding the making of the contract. We affirmed the trial court and at pages 346 and 347 stated: "The general rule is that a contract by a corporate officer or agent need not be made and signed in the name of the corporation to render the corporation liable thereon, if it was the intention of the parties to bind the corporation. (13 Am Jur 1034, sec 1107; Am Law Institute, Restatement, Agency, sec 149; Western Union Telegraph Co. v. Chicago & P. R. Co., 86 Ill 246.) . . . In determining whether it is the intention of the parties to bind the corporate principal or to bind the purported agent individually, all of the facts and circumstances surrounding the making of the contract are properly considered by the court. (Frankland v. Johnson, 147 Ill 520, 525.)"

■ After Midwest filed bankruptcy, the plaintiff filed a claim in the bankruptcy estate against the corporate bankrupt, alleging that it was liable as a lessee to the plaintiff for rent and for failure to yield up the premises in good condition as required by written lease, and attached to said claim, a copy of the lease which is also the basis of this lawsuit. In ascertaining the intention of the parties to a contract, regard will be had to the practical construction, which the parties, by their acts, have given the contract. Weger v. Robinson Nash Motor Co., 340 Ill 81, 91, 172 NE2d 7 (1930); Keefer Coal Co. v. United Elec. Coal Cos., 291 Ill App 477, 492, 10 NE2d 210 (3rd Dist 1937).

In asserting in its sworn claim that the corporation, Midwest, was the lessee, the plaintiff clearly indicated to the defendant its construction of the lease. The defendant acquiesced in this interpretation. It is

proper for courts to look to the interpretation the contracting parties place on their agreement, either contemporaneously or in its performance, for aid in obtaining its true meaning. Walters v. Walters, 409 Ill 298, 304, 99 NE2d 342 (1951); Northern Illinois Coal Corp. v. Cryder, 361 Ill 274, 284, 285, 197 NE 750 (1935); Walker v. Illinois Cent. R. Co., 215 Ill 610, 619, 74 NE 812 (1905).

In view of the facts and circumstances surrounding the execution of the lease, and the evidence tending to show the intention of the parties as to the capacity in which defendant, Nettleton, signed the lease, we cannot say that the trial court erred in holding that defendant signed the lease only in his capacity as president of, and on behalf of, the Midwest Building Supply Company, a corporation. The judgment is, accordingly, affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.