SCOTT MUNROE, Plaintiff-Appellee, v. BROWER REALTY AND MAN-
AGEMENT COMPANY, Defendant-Appellant.

First District (6th Division)   No. 1—88—3450

Opinion filed November 26, 1990.

RAKOWSKI, J., dissenting.

James A. Blazina, Chartered, of Chicago (James A. Blazina and Christopher Jacobs, of counsel), for appellant.

No brief filed for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff, Scott Munroe, brought an action against defendant, Brower Realty & Management Company, to recover his security deposit pursuant to the terms of a lease entered into between the two parties. On appeal, defendant contends that the trial court erred in awarding plaintiff his security deposit, plus earned interest, and by imposing a penalty for defendant's willful retention of the security deposit and interest.

Although no appellee's brief has been filed, we will address the merits of this case. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

On March 1, 1987, plaintiff and defendant executed a lease whereby plaintiff agreed to rent an apartment from defendant at 2306 West Nichols Road in Arlington Heights, Illinois, for a term beginning March 1, 1987, and ending on August 31, 1987. Pursuant to the lease agreement, plaintiff paid a security deposit to defendant in the amount of $610 (a $585 damage deposit plus a $25 key deposit). On August 31, 1987, plaintiff and defendant executed a second lease agreement whereby plaintiff agreed to rent an apartment unit located at 2208 West Nichols in Arlington Heights for a period beginning September 1, 1987, and ending August 31, 1988.

At trial, plaintiff testified that in September 1987 he received a check from defendant in the amount of $517.60 representing the return of his security deposit paid under the first lease, less $92.40, the cost incurred by defendant for cleaning the carpeting in the unit. However, when plaintiff attempted to negotiate the check, he learned that payment on the check had been stopped.

Plaintiff also testified that he and defendant had a verbal agreement that the security deposit he had paid under the first lease would be automatically transferred and applied as the security deposit due under the second lease. Plaintiff then testified that in January 1988 defendant successfully brought a forcible entry and detainer proceeding against him after which plaintiff vacated the premises and paid no rent for the remaining months covered by the lease.

Thomas Frawley, vice-president of defendant, testified that the corporation was retained by various owners to manage their respective properties. Frawley stated further that the corporation acted as agent on behalf of the owners. In that capacity, defendant earned commissions for leasing units for the owners, was paid for handling daily collections, made mortgage payments, remitted assessment payments, paid utility bills, prepared monthly reports to the owners reflecting cash flow and profits from the properties, and remitted to the owners the profits earned.

According to Frawley, the complex in which plaintiff rented the two units consisted of 72 six-flat buildings. Defendant managed 13 of those buildings, totaling 78 separate units. The investment group which owned the building in which plaintiff rented his first apartment was a partnership of 8 to 10 individuals. An entirely different limited partnership owned the building in which plaintiff rented the second apartment. Each of these partnerships owned two six-flat buildings, or 12 separate rental units, within the complex. Frawley did not believe that any of the individual investors belonged to both partnerships.

Frawley stated that after several unsuccessful attempts to obtain the security deposit for the second apartment from plaintiff, he authorized the stop payment order on the check previously issued to plaintiff and then applied that amount toward the security deposit due under the terms of the second lease.

In rendering judgment for plaintiff, the trial court made the following findings: (1) that the five-day notice given in defendant's forcible entry and detainer action provided that the lease would be terminated if rental payments were not made; (2) that plaintiff did not make payment and was subsequently evicted (although the record shows that plaintiff voluntarily vacated the premises), resulting in termination of the lease; (3) that although a lessee may remain liable for all future rents due under the terms of the lease, notwithstanding the lessor's reentry, where a lease expressly so provides, the lease in the instant case did not contain such a provision; (4) that defendant made an election of remedies to terminate the lease and could not justify its refusal to return plaintiff's security deposit on the ground that rent remained owing under the lease at the time of plaintiff's eviction; (5) that plaintiff paid the judgment on defendant's forcible entry and detainer action, and such judgment was not satisfied by applying the security deposit; (6) that the statute requiring a lessor to pay interest on a security deposit applied in the instant case because defendant was the lessor of the property even though it was not the owner of the property (Ill. Rev. Stat. 1987, ch. 80, par. 121); and (7) that the statute requiring the lessor to pay the lessee's attorney fees as a penalty for refusing to pay such interest applied in the present case because defendant willfully failed to pay such interest and to return plaintiff's security deposit (Ill. Rev. Stat. 1987, ch. 80, par. 122).

Defendant first argues that plaintiff was not entitled to the return of his security deposit because he failed to pay rent from February through August 1988. Defendant reasons that it can proceed under the terms of the lease despite the forcible entry and detainer proceeding because the lease so provided. We note that the record does not contain a copy of the lease that is the subject of this action. However, in rendering judgment, the trial court made the following findings concerning the lease:

"However, the Court can find no such specific provision in the lease dated August 22, 1987. Paragraph 13 of the lease provides if there is a default, lessor may, and at his election, declare the lease ended, re-enter without prejudice to any remedies which otherwise might be used for arrears of rent. Note the term is arrears of rent, there is no language talking about

future rent, only arrears.

The Court interprets that to mean the arrears of the present time up until the time that the defendant vacates—that the tenant vacates.

Paragraph 14 of the same lease says that the covenant to pay rent is independent of all other covenants.

Paragraph 15 of this lease allows the lessor to collect rents after service of any notice. Again the Court reiterates that the Court can find no such language as set forth in the [Lake Shore] Management case and in the Wysocki case."

■■ ■ The burden rests on defendant, as appellant, to provide a sufficient record to support the claim of error, and in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. (*Frisch Contracting Service Co. v. Personnel Protection, Inc.* (1987), 158 Ill. App. 3d 218, 511 N.E.2d 831.) Any doubts arising from the completeness of the record are resolved against the appellant. (*Frisch Contracting Service Co.,* 158 Ill. App. 3d at 221, 511 N.E.2d at 833.) In the instant case, defendant has failed to provide a copy of the lease, and we must presume, therefore, that the trial court's rendition of the particular provisions are accurate. Moreover, we note that defendant does not dispute the trial court's version of the provisions as set forth in the above-quoted statement by the court. Rather, defendant argues that the court's interpretation was incorrect because the court failed to recognize another provision of the lease which provided that the lessor's rights and remedies under the lease were cumulative.

Defendant, in its brief, sets out the following provision as paragraph 17 of the lease:

"The rights and remedies of lessor under this lease are cumulative. The exercise or use of any one or more thereof shall not bar lessor from exercise or use of any other right or remedy provided herein or otherwise provided by law nor shall exercise nor use of any right or remedy by lessor waive any other right or remedy."

Assuming, *arguendo*, that the lease contained this provision, that fact does not make the trial court's finding erroneous because the provision, as set forth by defendant, does not expressly provide that plaintiff's duty to pay rent survives his eviction pursuant to a forcible entry and detainer proceeding.

■ Defendant cites *Lake Shore Management Co. v. Blum* (1968), 92 Ill. App. 2d 47, 235 N.E.2d 366, and *Diplomat Motel, Inc. v. Pla-*

*teau, Inc.* (1967), 80 Ill. App. 2d 352, 225 N.E.2d 139 (abstract of opinion), as authority for the claim that it was justified in keeping plaintiff's security deposit to offset rent due following plaintiff's surrender of possession of the premises. We find, however, that defendant's reliance on these cases is misplaced. These cases involved lease terms which specifically provided that the tenant was obligated to pay all of the rent due under the lease despite service of a five-day notice. The lease in the *Lake Shore Management* case also contained a confession of judgment by the tenant for all of the rent due for the entire lease term. The lease at issue here did not contain any similar provisions. Consequently, we find that the cases relied upon by defendant are factually distinguishable from the instant case and are not controlling.

When plaintiff failed to pay rent, defendant successfully brought a forcible entry and detainer proceeding against him and recovered a judgment for the amount of rent owed by plaintiff. Plaintiff then satisfied this judgment. The forcible entry and detainer proceeding terminated the lease and, absent a lease provision to the contrary, simultaneously terminated plaintiff's obligations under the lease (*Broniewicz v. Wysocki* (1940), 306 Ill. App. 187, 28 N.E.2d 283). Consequently, defendant had no right to retain plaintiff's security deposit, and the trial court's order finding that plaintiff was entitled to recover the security deposit was proper.

Defendant also contends that the trial court erred in finding that plaintiff was entitled to receive interest on his security deposit from defendant. Based upon the facts presented in the record before us, we must agree. The pivotal element here is the fact that the property owner did not own 25 or more units, but the defendant did manage more than 25 units.

■ In Illinois, a lessor of residential property, containing 25 or more units, who receives a security deposit from a lessee, must pay interest to the lessee computed from the date of the deposit at a rate of 5% per year on any such deposit held by the lessor for more than six months. (Ill. Rev. Stat. 1987, ch. 80, par. 121.) We note that this is a penal statute which must be strictly construed and will not be extended to embrace matters beyond its terms. *Acme Fireworks Corp. v. Bibb* (1955), 6 Ill. 2d 112, 119, 126 N.E.2d 688, 691-92; *Molex, Inc. v. Pollution Control Board* (1973), 9 Ill. App. 3d 1032, 1033, 293 N.E.2d 731, 732.

■ While it has long been held that a lease encompasses contractual rights and obligations, it is fundamentally a conveyance of an interest in land for a determinate period. A lessor is a person who con-

veys such a possessory property interest to another. (H. Tiffany, The Law of Real Property §§37, 39, at 96-100 (2d ed. 1920).) A "lessor" is defined by Black's Law Dictionary 812 (5th ed. 1979) as "[a person] who grants a lease. *** In the case of real estate, the lessor is also known as the landlord." A "landlord" is defined in Black's Law Dictionary 790 (5th ed. 1979) as "[a person] who, being the owner of an estate in land, or a rental property, has leased it to another person, called the 'tenant.' "

■ In the conveyance of property, one can only transfer what he has because a person cannot grant what he does not have or grant to another rights in the property of a stranger which he does not himself possess. (73 C.J.S. *Property* §32, at 227 (1983).) Because a lease is a conveyance of a possessory interest in land, it can be granted only by one who has such an interest and cannot be made by a party who has no possessory interest or right in the property.

■ The signatures alone cannot be considered in determining who are parties to a lease. Rules of construction require that where the identity of the parties to the contract is not clear, all of the facts and circumstances surrounding the making of the contract may be considered to determine who are the actual parties. *M & J Diesel Locomotive Filter Corp. v. Nettleton* (1965), 56 Ill. App. 2d 146, 150, 205 N.E.2d 659, 661; *Midwest Grocery Co. v. Danno* (1961), 29 Ill. App. 2d 118, 123-24, 172 N.E.2d 648, 651.

■ In the instant case, the defendant was merely a management company employed by the owner to attend to the daily supervision of the property. The defendant had no possessory interest in the property and, therefore, could not convey what it did not have. Although defendant executed the written lease for the property, it could only do so on behalf of the owner and by virtue of the authority extended by the owner. (2A C.J.S. *Agency* §143, at 763-65 (1983).) Consequently, the defendant could not have been the lessor of the property in this case, and application of the statute requiring the payment of interest on plaintiff's security deposit was improper.

Moreover, even if we were to determine that defendant could be obligated to pay interest on security deposits, this statute would not apply to defendant under the facts of this case. The record reveals that although defendant managed 78 separate units, these units were owned by many different and distinct owners. Each of the partnerships from which plaintiff rented apartments owned two six-flat buildings, or 12 separate rental units. Neither of these partnerships owned 25 rental units, and we do not believe that these different and distinct ownership entities can be combined in order to satisfy the statutory

requirement that the lessor be a lessor of 25 or more residential units.

In construing statutes, the role of the courts is to ascertain and give effect to the intent of the legislature. (*Methodist Medical Center v. Taylor* (1986), 140 Ill. App. 3d 713, 489 N.E.2d 351; *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, 481 N.E.2d 277.) The plain meaning of the language used by the legislature is the safest guide in construing any act, and the court has no right to read into the statute words that are not found therein either by express inclusion or by fair implication. (*Indian Valley Golf Club, Inc.*, 135 Ill. App. 3d 543, 481 N.E.2d 277; *Illinois Publishing & Printing Co. v. Industrial Comm'n* (1921), 299 Ill. 189, 132 N.E. 511.) The words of a statute must be read in light of the purposes to be served, and those words must be read to reach a commonsense result. *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540.

The statute here in question is intended to benefit those who rent from large property owners, and the plain meaning of the statute requires the lessors of 25 or more residential units to pay interest on security deposits. We believe a commonsense definition of "lessor" as used in this statute must refer to those persons who receive and control the rents and profits from the property. If the statute applies only to persons who execute written leases, large property owners could easily manipulate their holdings to defeat the purposes of the statute. Such owners could retain several different management companies, each managing fewer than 25 units. By having the managers sign the leases as lessors, the property owners would be able to circumvent their statutory obligation to pay interest on security deposits.

As courts have done in other branches of the law, we look to control as the best indicia of true ownership. (See *IMM Acceptance Corp. v. First National Bank & Trust Co.* (1986), 148 Ill. App. 3d 949, 499 N.E.2d 1012 (beneficiary of Illinois land trust has an interest in property for purposes of Statute of Frauds); *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540 (beneficiary of Illinois land trust is the owner of the real estate for purposes of taxation); *Department of Conservation v. Franzen* (1976), 43 Ill. App. 3d 374, 356 N.E.2d 1245 (beneficiary of Illinois land trust has an interest in property for purposes of filing a cross-petition in an eminent domain proceeding).) We find, therefore, that courts must determine the true ownership of the property before deciding whether the statute is applicable.

Although we have found no cases which have interpreted the language in this statute as it is applied to property managers, we note

that in *Gittleman v. Create, Inc.* (1989), 189 Ill. App. 3d 199, 545 N.E.2d 237, the court's decision implicitly held that the defendant management company was obligated to pay interest on the security deposit. The issue presented in the case at bar, however, was not raised in *Gittleman.* That case did not consider, analyze, or discuss whether the management company was the lessor of the property. Consequently, we do not believe that *Gittleman* is controlling in the case at bar.

Because we have determined that defendant was not obligated to pay interest on plaintiff's security deposit, we necessarily hold that the trial court erred in finding that defendant was liable for the statutory penalty imposed for a willful failure to pay interest on the security deposit (Ill. Rev. Stat. 1987, ch. 80, par. 122).

For the foregoing reasons, that portion of the trial court's order which found that the plaintiff was entitled to the return of his security deposit is affirmed, and that portion of the order which found that defendant was liable for interest on the security deposit and for the statutory penalty is reversed.

Affirmed in part, reversed in part.

EGAN, J., concurs.

JUSTICE RAKOWSKI, dissenting:

I do not agree that the statute which requires the lessors of residential real estate to pay interest on security deposits applies only if the lessor happens to be the owner of the property. Neither the cases cited by the majority nor the purpose of the statute supports limiting the protection of the statute to renters only if their leases are signed by the property owner or his agent rather than by a real estate management company.

Defendant Brower Realty managed rental units for different owners. The complex where plaintiff rented two units had 72 buildings, each with six units. While several different limited partnerships owned the various buildings, Brower managed 14 of the buildings for a total of 84 units. Brower leased these units and received a commission for doing so.

The question then is whether this activity made Brower "a lessor of residential real property, containing 25 or more units." (Ill. Rev. Stat. 1987, ch. 80, par. 121.) The majority concludes that management companies are not included in the term "lessor." I reject this narrow view. A broader interpretation which includes management companies

is required by legislative history, the one case on point in Illinois and ordinary understanding of the term "lessor."

First, the legislature enacted this law as a form of protection for renters in buildings of 25 units or more without limiting it to situations where the owner or his agent signed the lease. During the Illinois House debates, Representative Merlo, the bill's sponsor, stated: "[I]t was pointed out to me that the average rent is three hundred, so it would mean that the landlord would be liable *or the management firm would be liable* for fifteen dollars." (Emphasis added.) (79th Ill. Gen. Assem., House Proceedings, August 1976, at 13 (statement of Representative Merlo).) The discussion continued about enforcement problems for such a small amount of money. The discussants simply accepted Merlo's statement that management firms could be lessors and then went on to debate penalty provisions which would make enforcement economically feasible for tenants.

Second, the appellate court cited the legislative debate and used this definition in *Gittleman v. Create, Inc.* (1989), 189 Ill. App. 3d 199, 203-04, 545 N.E.2d 237. In that case, the court ruled for two tenant plaintiffs against the defendant, "an Illinois corporation engaged in the business of managing residential apartment buildings." The issue on appeal was statutory penalties against landlords and no one argued the application of the statute to a management company. Nonetheless, the court cited the debate and applied the law, penalties included, to the defendant management company.

Finally, "[w]here the terms of a statute are not defined by the legislature, courts will assume they were intended to have their ordinary and popularly understood meanings, unless to do so would defeat the perceived legislative purpose." (*People v. Fink* (1982), 91 Ill. 2d 237, 240, 437 N.E.2d 623.) Black's Law Dictionary 812 (5th ed. 1979) defines "lessor" as one who rents property to another. The American Heritage Dictionary 725 (1985) defines "lessor" as "one who lets property under a lease." Thus, absent any other requirement for statutory construction, the court should define lessor in ordinary language simply as someone who lets property to a renter, regardless of whether this person owns the property or is a company which manages the rental business of the property. Here, the defendant executed a written lease naming itself as the lessor. Since the statute provides protection for renters against lessors, it follows that, absent any other indication, the definition of "lessors" commonly understood by renters should be the one used.

The majority expresses concern that large property owners could manipulate their holdings to avoid falling under the statute by retain-

ing numerous management companies. Yet, no consideration is given to the position individuals such as Munroe find themselves in as a result of the majority's holding. When a renter executes a lease in these situations, he generally deals only with the management company and doubtless does not even know the identity of the building's owner. While the majority analyzes the role of the management company as an agent, no attention is paid to the ramifications of a management company's failure to disclose the identity of its principal.

Under the majority view a plaintiff such as Munroe, who prevails against the management company to recover his security deposit, but is unsuccessful in recovering his statutorily entitled penalty from the very party which wrongfully withheld his security deposit, is now obligated to determine the identity of the owner, amend the complaint, issue summons and pursue this second party.

For these reasons, I believe that the term "lessor" applies to management companies as well as owners. Accordingly, I would affirm.