LORELEI KUTCHER, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. BARRY REALTY, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—04—3698

Opinion filed November 29, 2005.—Rehearing denied December 27, 2005.

James B. Zouras, of Touhy & Touhy, Ltd., of Chicago, for appellant.

James K. Genden, of Torshen, Slobig, Genden, Dragutinovich & Axel, Ltd., of Chicago, for appellees.

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Lorelei Kutcher, appeals from an order of the circuit court that dismissed with prejudice her second amended complaint against defendant B&A Associates pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)).[1]

Plaintiff was a tenant who resided in a rental apartment at 860 Hinman Avenue in Evanston, Illinois (Hinman Apartments), from approximately July 15, 1999, until June 30, 2004. She entered into a lease agreement with Barry Realty, dated June 23, 1999, and paid a security deposit of $650 for the apartment, which was later increased to $655 in 2000. Plaintiff entered into lease extension agreements with Barry Realty on March 21, 2000, Barry & Associates on June 26, 2000, B&A Associates on December 13, 2001, and Evanston Neighborhood Properties on January 22, 2003. Each time plaintiff entered into a lease extension agreement, her security deposit was carried forward and applied to the new lease. From July 15, 1999, through June 1, 2003, plaintiff alleged she never received interest or notice of interest being credited on her security deposit. She further alleged Evanshire Properties, the owner of Hinman Apartments, subsequently sent her a letter stating that on June 16, 2003, her account had been credited with $32.75 of security deposit interest.

On April 29, 2003, plaintiff, individually and on behalf of all oth-

---

[1]On November 4, 2004, the trial court entered a separate order granting defendant Barry Realty's motion to dismiss with prejudice plaintiff's second amended complaint. Plaintiff contests the dismissal of her complaint as to B&A Associates only and not as to any other defendant.

ers similarly situated, filed her original complaint against defendants under the Illinois Security Deposit Interest Act (Act) (765 ILCS 715/ 0.01 *et seq.* (West 2002)). On July 14, 2004, a second amended complaint was filed alleging, in relevant part, that B&A Associates (B&A) was a managing agent for Hinman Apartments during a portion of the period in which plaintiff leased an apartment; that Hinman Apartments contained 25 or more units; and B&A failed to pay the appropriate interest on the security deposit as required under the Act. Plaintiff sought certification of a class, the recovery of earned interest on security deposits allegedly withheld by B&A, statutory damages equal to the total amount of the security deposits, and attorney fees and costs. Attached to the complaint were the original lease agreement and the four lease extension agreements. All five documents were signed by defendants, respectively, as "lessor," and the building's owner, Evanshire Property, was not referenced.

On August 16, 2004, B&A moved to dismiss plaintiff's second amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2002)). B&A relied upon *Munroe v. Brown Realty & Management Co.*, 206 Ill. App. 3d 699 (1990), in support of its position that as a managing agent for Hinman Apartments, it was not a "lessor" within the meaning of the Act and could not be held liable as an agent of the building's owner.

On November 4, 2004, the trial court granted B&A's motion and dismissed with prejudice plaintiff's second amended complaint. Relying upon *Munroe*, the trial court concluded that B&A was not a lessor for purposes of the Act. The trial court expressly found no just reason to delay enforcement or appeal under Rule 304(a) (155 Ill. 2d R. 304(a)), and this appeal ensued.

On appeal, plaintiff contends her second amended complaint stated a sufficient claim to avoid dismissal under section 2—615 of the Code because B&A was a "lessor" within the meaning of the Act and subject to its requirements.

When we review a section 2—615 dismissal, we apply *de novo* review (*Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999)) and must determine whether the allegations contained in the complaint, when interpreted in the light most favorable to the plaintiff, sufficiently set forth a cause of action (*Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996)). Likewise, we apply *de novo* review to questions of statutory interpretation. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267 (2003).

"The fundamental rule of statutory interpretation is to give effect to the intention of the legislature." *County of Knox ex rel. Masterson*

*v. Highlands, L.L.C.,* 188 Ill. 2d 546, 556 (1999). A court must first look to the words of a statute, which are the best indication of the legislative intent. *County of Knox,* 188 Ill. 2d at 556. If the statutory language is clear, it must be given effect without utilizing other tools of interpretation. *County of Knox,* 188 Ill. 2d at 556. "In interpreting a statute, it is never proper for a court to depart from plain language by reading into a statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent." *County of Knox,* 188 Ill. 2d at 556.

■ Section 1 of the Act provides, *inter alia*:

"A lessor of residential real property, containing 25 or more units in either a single building or a complex of buildings located on contiguous parcels of real property, who receives a security deposit from a lessee to secure the payment of rent or compensation for damage to property shall pay interest to the lessees computed from the date of the deposit ***." 765 ILCS 715/1 (West 2002).

Section 2 of the Act provides, *inter alia*:

"A lessor who willfully fails or refuses to pay the interest required by this Act shall, upon a finding by a circuit court that he has willfully failed or refused to pay, be liable for an amount equal to the amount of the security deposit, together with court costs and reasonable attorney's fees." 765 ILCS 715/2 (West 2002).

The Act's legislative history establishes that the purpose of section 2 was to set forth a penalty for lessors who ignored the mandate of section 1, which was a form of protection for renters in buildings containing 25 units or more. During the Illinois House debates, while considering the severity of the penalty to be imposed for violating section 1, Representative Merlo, the bill's sponsor, stated:

" '[I]t was pointed out to me that the average rent is three hundred, so it would mean that the landlord would be liable *or the management firm* would be liable for fifteen dollars, you and I know that this is not a realistic figure that he's not going to abide by the law for fifteen dollars ***." (Emphasis added.) 79th Ill. Gen. Assem., House Proceedings, May 11, 1976, at 13 (statements of Representative Merlo).

In *Munroe,* the trial court awarded the plaintiff his security deposit, plus earned interest, and imposed a penalty on the defendant management company for the willful retention of the plaintiff's security deposit and interest. *Munroe,* 206 Ill. App. 3d at 700. The appellate court reversed the trial court, noting that the Act did not apply to the defendant, who had signed a residential real estate lease on behalf of the owner. *Munroe,* 206 Ill. App. 3d at 707. According to the *Munroe* court, the defendant was merely a management company employed by the owner to attend to the daily supervision of the

property; that it did not have a possessory interest in the property; and it could not convey what it did not have. *Munroe*, 206 Ill. App. 3d at 705.

While acknowledging the defendant executed the written lease for the apartment, the *Munroe* court held it could only do so on behalf of the owner and by virtue of the authority extended by the owner. *Munroe*, 206 Ill. App. 3d at 705. Consequently, the defendant was not the lessor of the property, and the trial court's application of the Act requiring the payment of interest on the plaintiff's security deposit was improper. *Munroe*, 206 Ill. App. 3d at 705. The court reasoned that "a commonsense definition of 'lessor' as used in this statute must refer to those persons who receive and control the rents and profits from the property." *Munroe*, 206 Ill. App. 3d at 706. The court ultimately concluded that even if the defendant could be obligated to pay interest on security deposits, the Act would not apply to it under the facts of the case. *Munroe*, 206 Ill. App. 3d at 705. While the defendant managed 78 separate units, the units were owned by many different and distinct owners. *Munroe*, 206 Ill. App. 3d at 705. The court concluded that "[t]he pivotal element [in the case] is the fact that the property owner did not own 25 or more units, but the defendant did manage more than 25 units." *Munroe*, 206 Ill. App. 3d at 704.

The dissenting justice in *Munroe* disagreed with the majority's position that the Act applies only if the lessor happens to be the owner of the property and rejected the conclusion that management companies are not included in the term "lessor." *Munroe*, 206 Ill. App. 3d at 707 (Rakowski, J., dissenting). The dissent noted that the legislative history indicates the policy for awarding costs and attorney fees is to protect renters in buildings of 25 units or more and to set a penalty for landlords who ignore the statute's requirements. *Munroe*, 206 Ill. App. 3d at 707-08 (Rakowski, J., dissenting). In doing so, the legislature did not limit the penalty to situations where the owner or his agent signed the lease. *Munroe*, 206 Ill. App. 3d at 708 (Rakowski, J., dissenting). The dissent reasoned:

> "[T]he court should define lessor in ordinary language simply as someone who lets property to a renter, regardless of whether this person owns the property or is a company which manages the rental business of the property. Here, the defendant executed a written lease naming itself as the lessor. Since the statute provides protection for renters against lessors, it follows that, absent any other indication, the definition of 'lessors' commonly understood by renters should be the one used." *Munroe*, 206 Ill. App. 3d at 708 (Rakowski, J., dissenting).

In *Gittleman v. Create, Inc.*, 189 Ill. App. 3d 199 (1989), relied upon by plaintiff and the dissent in *Munroe*, two tenant plaintiffs sued the defendant landlord, who was engaged in the business of managing residential property, to recover security deposits and interest under the Act. *Gittleman*, 189 Ill. App. 3d at 200. The issue on that appeal, however, was the statutory penalties against the defendant-landlords, not whether the Act applied to management companies. *Gittleman*, 189 Ill. App. 3d at 200. The *Gittleman* court, however, specifically cited Representative Merlo's comments during the Illinois House debates regarding management companies, and applied the Act, including penalties, to the defendant management company. *Gittleman*, 189 Ill. App. 3d at 203-04.

We also find *Hayward v. Tinervin*, 123 Ill. App. 3d 302 (1984), instructive. There, the tenant plaintiff filed suit against his apartment owner's agent seeking a return of his security deposit and double recovery under the Illinois Security Deposit Return Act, which governs improper withholding of a security deposit. *Hayward*, 123 Ill. App. 3d at 304. The trial court dismissed the second count of the plaintiff's complaint on the grounds that the defendant was not the owner but merely an agent of the apartment owner with authority to execute a lease on behalf of the owner. *Hayward*, 123 Ill. App. 3d at 305. The appellate court reversed, holding that the defendant was a "lessor" within the meaning of the statute as it held itself out to plaintiff as the lessor and that the plaintiff was entitled to rely upon that representation. *Hayward*, 123 Ill. App. 3d at 305.

Turning to the instant case, we note that that portion of the *Munroe* decision which B&A relies upon, that a management company cannot be a lessor under the Act, constitutes *dicta* and is not controlling in our disposition. The *Munroe* court specifically held that the "pivotal element" in that case was the fact that the property owner did not own 25 or more units, whereas the defendant managed more than 25 units. Here, in contrast, plaintiff alleged that the actual owner of her apartment building owned more than 25 units and that B&A managed more than 25 units.

■ We agree with the dissent in *Munroe* that neither the purpose of the Act nor its legislative history supports limiting its protection to renters only if a lease is signed by the property owner rather than a real estate management company. Black's Law Dictionary defines "lessor" as "[o]ne who grants a lease. One who rents property to another." Black's Law Dictionary 902 (6th ed. 1990). The Oxford Dictionary defines "lessor" as "a person who lets a property by lease." The Oxford Dictionary 780 (9th ed. 1995). In the instant case, B&A executed a lease extension agreement with plaintiff in 2001, in which

it specifically held itself out as the lessor, and the actual owner of the property, Evanshire, was never disclosed. Generally, an agent who contracts with a third party on behalf of an undisclosed or partially disclosed principal is liable personally on the contract. *Jameson Realty Group v. Kostiner*, 351 Ill. App. 3d 416, 430 (2004). It was not the duty of plaintiff to discover the identity of the undisclosed building owner. We find that inasmuch as the Act provides protection for renters against lessors, it follows that, absent any other indication, the definition of lessors commonly understood by renters should be the one used. Moreover, we conclude that *Gittleman* and *Hayward* support an interpretation of the Act that includes management companies. For the foregoing reasons, we hold B&A was a lessor within the meaning of the Act and that the trial court erred in granting B&A's motion to dismiss plaintiff's second amended complaint.

Accordingly, the order of the circuit court dismissing plaintiff's second amended complaint against B&A is hereby reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GARCIA, P.J., and WOLFSON, J., concur.